UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

NATALIE MENASHE, et al.,

                            Plaintiffs,         Civ. No: 1:22-cv-22220-RNS

vs.

GEORGES ZARD ABOU JAOUDE, et al.,

                            Defendants.
_____/

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION PURSUANT TO
FED. R. CIV. P. 4(f)(3) FOR LEAVE TO EFFECT SERVICE BY ALTERNATE MEANS**

For the reasons below, plaintiffs seek leave, pursuant to Fed. R. Civ. P 4(f)(3), to serve process on defendant Georges Zard Abou Jaoude in the manner described in their Motion.

**a. Relevant Background**

This is a civil action under the Alien Tort Claims Act, 28 U.S.C. § 1350 and the Torture Victim Protection Act (28 U.S.C. § 1350, note), arising from a terrorist bombing executed by the Hezbollah terrorist organization at the Sarafovo Airport in Burgas, Bulgaria, on July 18, 2012. The plaintiffs are the victims of the bombing, their estates, and their immediate family members.

The defendants, Georges Zard Abou Jaoude, Mohamad Hamdoun and Ahmad Safa, were senior officers of Lebanese Canadian Bank, SAL ("LCB"). LCB is a corporation based in Beirut, Lebanon. LCB previously operated as a bank, but went into liquidation in 2011 following enforcement actions by the U.S. Government, which found that, circa 2002-2011, LCB laundered hundreds of millions of dollars for Hezbollah. (DE 1 at ¶¶ 11-16).

Defendant Georges Zard Abou Jaoude ("Abou Jaoude") resides in Lebanon. He was both Chairman and General Manager of LCB during the period at issue, and served as Chair of LCB's

1

Anti-Money Laundering Committee. Utilizing these top positions, Abou Jaoude directed LCB's decade-long money laundering activities for Hezbollah. (*Id*. at ¶¶ 11-22; 61-69; 72-78; 110-184). Indeed, the U.S. Treasury found that Abou Jaoude was "in frequent—in some cases even daily—communication" with Hezbollah operatives, and personally processed transactions on their behalf. (*Id*. at ¶ 76). Abou Jaoude currently serves as one of LCB's two liquidators. (*Id*. at ¶¶ 63, 184).

    b. **Abou Jaoude May Be Served At His Office Near Beirut**

Defendant Abou Jaoude is the founder and head of the "GZA Group." The letters "GZA" are an acronym for the defendant's full name, *i.e.*, "Georges Zard Abou Jaoude." The GZA Group operates a sophisticated, English-language website (gzagroup.com), which explains that: "The GZA Group is the **main umbrella that incorporates all of George Zard Abou Jaoude's activities**, investments, expansion plans, and especially **his** real estate developments." (Exhibit A) (emphasis added).[1] The GZA Group is not only eponymously named after defendant Abou Jaoude himself, but its public marketing "brand" is closely focused on, and intertwined with, defendant Abou Jaoude **personally**. Thus, GZA Group's website features a page containing a fulsome biography of defendant Abou Jaoude (Exhibit B), and a separate page setting forth defendant Abou Jaoude's personal "Mission and Vision." (Exhibit C). These webpages are also adorned with photographs of defendant Abou Jaoude himself. (Exhibits B-C).

Additionally, the webpages discussing the GZA Group's real estate projects and its Corporate Social Responsibility policies are heavily devoted to, and essentially constitute, a panegyric and a paean to, defendant Abou Jaoude personally. *See* Exhibit D ("George Zard Abou Jaoude started his real estate career in Saudi Arabia ... he … successfully developed over twenty high-end

---

[1] This webpage, and all the webpages attached hereto as exhibits, were viewed and captured from the URLs, and at the times, appearing in the margins thereof.

architecture and interior design projects ... A decade later, Abou Jaoude moved back to Lebanon and undertook over thirty residential, commercial and mixed-use projects ... Abou Jaoude is also the man behind Zardman, a new and visionary real estate company."); and Exhibit E ("George Zard Abou Jaoude is a firm believer in preserving Lebanon's greenery ... After the 2006 Lebanese-Israeli war, Abou Jaoude had participated in the United Nation's project to demine the southern regions of Lebanon ... Abou Jaoude wanted to give back to the Lebanese community ... Abou Jaoude is a devoted promoter of local businesses ... Abou Jaoude has always wanted to give back to his community and those in need ... Abou Jaoude is a constant supporter of education ... Abou Jaoude granted numerous scholarships to those hard workers who needed financial assistance ... George Zard Abou Jaoude is a self-made man with a lot to say about the road that led him to become the businessman he is today.").

The GZA Group's website also provides its office address, which is: **Beit Misk, Metn Expressway, Atshaneh, Metn, Lebanon**. Exhibit F.[2]

c. **Attempting Service Under Rule 4(f)(2)(C)(ii) Is Not Practicable in This Case**

Given defendant Abou Jaoude's central and overwhelmingly **personal** role in the GZA Group, there is no question that documents addressed to Abou Jaoude and delivered to the GZA Group will in fact reach defendant Abou Jaoude.[3]

At the same time, however, precisely because of his senior position, and given his age (70), it is extremely likely that defendant Abou Jaoude himself does not personally handle or sign for incoming mail, and that a receptionist or secretary deals with those tasks. Nor is there any way to

---

[2] Atshaneh (sometimes spelled Atchaneh) is located about a dozen miles east of Beirut.

[3] Comprehensive directories of residential addresses are not available in Lebanon, and plaintiffs have been unable to locate a home address for Abou Jaoude.

ensure that defendant Abou Jaoude will be present at the GZA Group office at the exact time that the package containing the summons and complaint arrives. These circumstances strongly militate against attempting to effect service on defendant Abou Jaoude pursuant to Fed. R. Civ. P. 4(f)(2)(C)(ii), which allows service outside the United States on an individual defendant "using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt."[4] Rule 4(f)(2)(C)(ii) is not practicable here because courts have construed that rule to require personal service to the defendant, and have held that delivery to the defendant's workplace is not sufficient. "In this case, the receipts were signed by receptionists at Romero's place of work, not by Romero himself. There is no other evidence in the record indicating Romero received the summons and complaint; therefore, Romero was not properly served under Rule 4(f)(2)(C)(ii)." *Intelsat Corp. v. Multivision TV LLC*, 736 F. Supp. 2d 1334, 1342 (S.D. Fla. 2010). *Cf. Naseer v. Mirabella Found.*, 2009 WL 10706236, at *2 (M.D. Fla. May 21, 2009) (service on defendant's purported workplace ineffective under Rule 4(f)(2)(C)(ii) absent "receipt signed by" defendant himself or "other evidence of delivery of the summons and complaint to" defendant).

Though plaintiffs believe this construction of Rule 4(f)(2)(C)(ii) is overly narrow, and while it is true (as far as plaintiffs can determine) that the Eleventh Circuit has not ruled whether Rule 4(f)(2)(C)(ii) requires personal delivery, it would be a waste of judicial and party resources to litigate this question here (particularly since, as discussed below, permitting alternative service under Rule 4(f)(3) obviates any such debate).

---

[4] As discussed below, Rule 4(f)(3) contains no exhaustion requirement, and plaintiffs may utilize Rule 4(f)(3) (with leave of the Court) without any showing that other methods of service are unavailable. Nonetheless, because Rule 4(f)(2)(C)(ii) is a commonly used method of service on overseas defendants, and the Court might otherwise question why plaintiffs are not resorting to that method, plaintiffs believe it is appropriate (albeit not required) to explain why they cannot do so in this case.

Avoiding unnecessary disputes over the validity of service on defendant Abou Jaoude is especially advisable in light of Abou Jaoude's own track record relating to service of process in civil actions brought against LCB itself. For example, *Licci v. LCB*, No. 505931/2015 (Sup. Ct. N.Y. Kings County), is an action against LCB brought in New York State court by civilians injured in rocket attacks carried out by Hezbollah in 2006. On April 26, 2017, the *Licci* court entered a default against LCB, after it failed to respond to the complaint. (*Id*. at NYSCEF No. 58). Six months later, **after** the *Licci* plaintiffs had **already** filed their damages evidence in support of their motion for default judgment, LCB appeared and moved to vacate the default. (*Id*. at Nos. 67-81). In support of that motion, defendant Abou Jaoude submitted an Affirmation in his capacity as co-liquidator of LCB. (Exhibit G). Abou Jaoude frankly admitted in his Affirmation that he had decided to ignore service of process in the *Licci* action, because counsel had informed him that the service was not valid. (*Id*. at ¶¶ 9, 11).

Similarly, *Kaplan v. LCB*, 08-cv-7253-GBD-KHP (S.D.N.Y.), is an action against LCB under the federal Antiterrorism Act ("ATA"), 18 U.S.C. § 2333, brought by American citizens injured in the 2006 Hezbollah rocket attacks. On June 9, 2021, the Second Circuit found that the *Kaplan* plaintiffs stated a valid ATA aiding and abetting claim against LCB, and remanded the case to the district court for further proceedings. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021). After the remand, LCB failed to file an answer, and its default was entered. LCB moved to vacate the default many months after its answer was due, and in support of that motion submitted a declaration from defendant Abou Jaoude (and his co-liquidator, co-defendant Hamdoun), explaining that the failure to answer the *Kaplan* complaint and the default, had resulted from a purported "misunderstanding" with counsel. (Exhibit H at ¶ 7).

In light of this history, plaintiffs here are understandably desirous of eliminating (or at least reducing to an absolute minimum) any opportunities for defendant Abou Jaoude to engage in similar conduct in this action regarding service of process, which will only waste the time and resources of the Court and the plaintiffs, and delay the orderly progress of the case. Neither the plaintiffs nor the Court should open the door here to potential post-hoc (or even post-default) arguments from Abou Jaoude, based on similar claims of poor advice from counsel and/or putative "misunderstandings," regarding the effectiveness of service under Rule 4(f)(2)(C)(ii).

d. **The Court Should Permit Service Under Rule 4(f)(3)**

Given the certainty that Abou Jaoude will receive documents addressed to him and delivered to the GZA Group (on the one hand), but the improbability that Abou Jaoude would personally receive the documents in-hand from the courier (on the other hand), plaintiffs should be authorized, pursuant to Rule 4(f)(3), to serve Abou Jaoude by sending the summons and complaint by an international courier company (*e.g.*, FedEx, DHL or UPS) to the office of the GZA Group (at the address listed on its website – *see* Exhibit F).

Rule 4(f)(3) "allows a district court to order an alternate method for service to be effected upon foreign defendants, provided that it is not prohibited by international agreement, and is reasonably calculated to give notice to the defendants." *Tapestry, Inc. v. 2012coachoutlets.com*, 2018 WL 8369387, at *1 (S.D. Fla. Feb. 6, 2018) (Scola, *J.*), Importantly, "service through Rule 4(f)(3) is not considered a last resort or extraordinary relief." *Codigo Music, LLC v. Televisa S.A. de C.V.*, 2017 WL 4346968, at *7 (S.D. Fla. Sept. 29, 2017). Indeed, Rule 4 "does not require a party to attempt service of process by those methods enumerated under subsections (f)(1) and (f)(2) … before petitioning the court for alternative relief under subsection 4(f)(3)." *Mao-Mso Recovery II, LLC v. Boehringer Ingelheim Pharms., Inc.*, 2017 WL 10402588, at *1 (S.D. Fla. Oct. 10, 2017);

6

*Cf. TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 691-692 (S.D. Fla. 2012) (Scola, *J.*) ("Despite coming last in the list of available methods of service in Rule 4(f), there is no indication from the plain language of the Rule that the three subsections, separated by the disjunctive 'or,' are meant to be read as a hierarchy.")

As noted, Rule 4(f)(3) requires that alternative service be effected by "means not prohibited by international agreement." That requirement is no obstacle here. Plaintiffs seek to deliver the summons and complaint to Abou Jaoude in Lebanon, which is not party to the Hague Convention or other international convention on service of process. *See e.g.,* https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Lebanon.html (Lebanon not a party to the Hague Service Convention or the Inter-American Service Convention).

Alternative service under Rule 4(f)(3) must also satisfy the requirements of due process. In this context, "due process requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tracfone*, 278 F.R.D. at 692 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Plaintiffs' proposed method of service easily meets this standard: as shown above, there is no question that documents addressed to defendant Abu Jaoude and delivered to the GZA Group will reach Abou Jaoude. And needless to say, delivery by a reputable international courier service such as FedEx, DHL or UPS, is an extremely reliable method of delivery. Thus, plaintiffs' proposed method of service is considerably more than merely "reasonably calculated, under all the circumstances, to apprise" defendant Abou Jaoude of this action.

Indeed, courts applying Rule 4(f)(3) commonly authorize less conventional and less certain methods of service than that requested by plaintiffs here. *Cf. Bialik v. Individuals Identified on*

*Schedule "A,"*, 2022 WL 4268594, at *2 (S.D. Fla. Sept. 15, 2022) (email and website publication); *Stern v. SK Golden Inv., LLC.*, 2022 WL 3701217, at *2 (S.D. Fla. Mar. 15, 2022) (email); *Oueiss v. Al Saud*, 2021 WL 5088942, at *8 (S.D. Fla. Jan. 18, 2021) (Twitter or email).

Thus, the entirely conventional and highly reliable method of service proposed in plaintiffs' Motion here is an "easy lift" under Rule 4(f)(3).

**WHEREFORE**, the instant motion should be granted.

October 14, 2022

Plaintiffs, by their attorneys,

By:   /s/ Asher Perlin
Asher Perlin, Esq.
Florida Bar No. 0979112
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
Tel. 786-687-0404
Email: asherperlin@gmail.com
*Counsel for Plaintiffs*

8