UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

NATALIE MENASHE, et al.,

                                   Plaintiffs,         Civ. No: 1:22-cv-22220-RNS

vs.

GEORGES ZARD ABOU JAOUDE, et al.,

                                   Defendants.

_____/

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION PURSUANT TO
FED. R. CIV. P. 4(f)(3) FOR LEAVE TO EFFECT SERVICE BY ALTERNATE MEANS
UPON DEFENDANTS HAMDOUN AND SAFA**

For the reasons below, Plaintiffs seek leave, pursuant to Fed. R. Civ. P 4(f)(3), to serve process on Defendants Mohamad Hamdoun ("Hamdoun") and Ahmad Safa ("Safa") in the manner described in their Motion.

    a. **Relevant Background**

This is a civil action under the Alien Tort Claims Act, 28 U.S.C. § 1350 and the Torture Victim Protection Act (28 U.S.C. § 1350, note), arising from a terrorist bombing executed by the Hezbollah terrorist organization at the Sarafovo Airport in Burgas, Bulgaria, on July 18, 2012. The plaintiffs are the victims of the bombing, their estates, and their immediate family members.

The defendants, Georges Zard Abou Jaoude, Mohamad Hamdoun and Ahmad Safa, were senior officers of Lebanese Canadian Bank, SAL ("LCB"). LCB is a corporation based in Beirut, Lebanon. LCB previously operated as a bank, but went into liquidation in 2011 following enforcement actions by the U.S. Government, which found that, circa 2002-2011, LCB laundered hundreds of millions of dollars for Hezbollah. (DE 1 at ¶¶ 11-16).

1

Defendant Mohamad Hamdoun is the former Deputy General Manager of LCB and served on LCB's Executive Board. *Id.* at ¶ 64. He served as the Vice Chair of LCB's Anti-Money Laundering Committee. *Id.* Along with Abou Jaoude and other LCB officers, Hamdoun established LCB policies and initiated, directed, authorized, and executed LCB's actions detailed in the Complaint. *Id.* Hamdoun exploited his interlocking board and management positions in LCB, to direct extensive money laundering operations in support of Hezbollah, and to conceal from U.S., Lebanese, and other law enforcement officers and regulators LCB's financing of Hezbollah and LCB's laundering of Hezbollah money. *Id.* at ¶ 66. Hamdoun is currently acting as one of LCB's two liquidators, putting him in a position to conceal the full extent of his participation in Hezbollah financing and money laundering activities. *Id.* at ¶¶ 67, 184.

Defendant Ahmad Safa is the former Assistant General Manager responsible for LCB's Branches and Operations. Among other things he oversaw all LCB branches. Safa reported directly to Abou Jaoude and functioned as Hamdoun's operational enforcer at the Bank. Through his managerial and operational roles at LCB, Safa organized and directed LCB's actions detailed in the Complaint. In or around 2010, Safa left the Bank. *Id.* at ¶ 68.

- b. **Plaintiffs Have Informally Requested That Hamdoun and Safa Waive Service but Their Attorneys Have Refused to Respond**

Both Hamdoun and Safa reside in Lebanon, and were also named as defendants in *Lelchook, et al. v. Lebanese Canadian Bank, SAL, et al.*, 18-cv-12401-GBD-KHP (S.D.N.Y.). *Lelchook* is a civil action against LCB, Hamdoun, and Safa under the Antiterrorism Act, 18 U.S.C. § 2333, brought by American citizens killed or injured in Hezbollah terrorist attacks carried out in 2006. In *Lelchook*, both Hamdoun and Safa waived service of process. (*Id.* at DE 30, 32). Accordingly, and given that *Lelchook* and this action both arise from Defendants' money-laundering for Hezbollah, counsel for Plaintiffs here contacted counsel for Hamdoun and Safa in *Lelchook* after

the filing of this case, to inquire whether Hamdoun and Safa would agree to waive service in this action, too.

Hamdoun's counsel of record in *Lelchook* (Mitchell R. Berger of Squire Patton Boggs) neither responded to nor even acknowledged several emails from Plaintiffs' counsel here, inquiring whether Hamdoun would waive service in this action. By contrast, Safa's counsel of record in *Lelchook*, Daniel A. Schnapp of Nixon Peabody, initially informed Plaintiffs' counsel on August 2, 2022, that: "We should be able to respond by the end of this week." However, despite multiple follow-up requests from Plaintiffs' counsel, Mr. Schnapp never provided the promised response (positive or negative) to the waiver proposal and did not reply at all to further emails from Plaintiffs' counsel.

After eventually concluding that their unrequited efforts at dialogue and obtaining waivers of service were in vain, Plaintiffs sought to locate addresses for Hamdoun and Safa in Lebanon. This task is not simple because comprehensive directories of residential (or even business) addresses are not available in Lebanon. Notwithstanding the difficulty, Plaintiffs possess Mr. Hamdoun's business address – the office of LCB, where he serves as one of two liquidators. However, Plaintiffs have been unable to obtain a current address for Safa.

Accordingly, Plaintiffs seek to serve both Defendants under Rule 4(f)(3), Fed. R. Civ. P., which allows the Court to authorize Plaintiffs to serve Defendants by any means not prohibited by international agreement. As stated in their Motion, Plaintiffs respectfully request from the Court an order directing them to serve Defendant Hamdoun (a) *via* international courier at the Beirut office of Lebanese Canadian Bank, of which he serves as one of two liquidators; and (b) by sending the summons and complaint to Squire Patton Boggs, which is representing Hamdoun in *Lelchook*, and which also represents LCB – under Hamdoun's supervision – in *Kaplan v. LCB*, 08-cv-7253-

GBD-KHP (S.D.N.Y.). *See* Declaration of Mohamad Ibrahim Hamdoun and Georges Zard Abou Jaoude, filed March 14, 2022 in *Kaplan*, Exhibit A hereto.

Plaintiffs also seek leave to serve Defendant Safa under Rule 4(f)(3) by sending the summons and complaint to Nixon Peabody, LLP, the law firm that represents him in *Lelchook*.

### c. **Plaintiffs May Serve Foreign Defendants by Any Means Directed by the Court That Are Not Prohibited by International Agreement**

Under Rule 4(f)(3), a party may serve a foreign defendant by any means not prohibited by international agreement, as the court orders. *Tapestry, Inc. v. 2012coachoutlets.com*, 2018 WL 8369387, at *1 (S.D. Fla. Feb. 6, 2018) (Scola, J.); *Kipu Sys., LLC v. ZenCharts, LLC*, No. 17-24733-CIV, 2018 WL 8264634, at *1 (S.D. Fla. Mar. 29, 2018), citing Fed. R. Civ. P. 4(f)(3). "The only limitations in Rule 4(f)(3) are that: (1) service must be directed by the court, (2) it must not be prohibited by international agreement, and (3) due process requires that it must be 'reasonably calculated' to give notice to a defendant." *Oueiss v. Al Saud*, No. 1:20-CV-25022-KMM, 2021 WL 5088942, at *1 (S.D. Fla. Jan. 18, 2021). Additionally, Rule 4(f)(3) includes no exhaustion requirement, and plaintiffs need not attempt other means of service before moving for leave to serve process under Rule 4(f)(3). *Id.*; *Codigo Music, LLC v. Televisa S.A. de C.V.*, 2017 WL 4346968, at *7 (S.D. Fla. Sept. 29, 2017) ("service through Rule 4(f)(3) is not considered a last resort or extraordinary relief."). Specifically, Rule 4 "does not require a party to attempt service of process by those methods enumerated under subsections (f)(1) and (f)(2) … before petitioning the court for alternative relief under subsection 4(f)(3)." *Mao-Mso Recovery II, LLC v. Boehringer Ingelheim Pharms., Inc.*, 2017 WL 10402588, at *1 (S.D. Fla. Oct. 10, 2017); *Cf. TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 691-692 (S.D. Fla. 2012) (Scola, *J*.) ("Despite coming last in the list of available methods of service in Rule 4(f), there is no indication from the plain language of the Rule that the three subsections, separated by the disjunctive 'or,' are meant to be read as a

4

hierarchy.") Accordingly, district courts enjoy broad discretion in allowing alternate means of service under Rule 4(f)(3). *Prewitt Enterprises, Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 926-27 (11th Cir. 2003); *Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-CIV, 2014 WL 644755 (S.D. Fla. Feb. 19, 2014).

As noted, Rule 4(f)(3) requires that alternative service be effected by "means not prohibited by international agreement." That requirement is no obstacle here. Plaintiffs seek to deliver the summons and complaint to Hamdoun and Safa, both of whom are in Lebanon. Lebanon is not party to the Hague Convention or other international convention on service of process. *See* https://travel.state.gov/con-tent/travel/en/legal/Judicial-Assistance-Country-Information/Lebanon.html (Lebanon not a party to the Hague Service Convention or the Inter-American Service Convention).

Alternative service under Rule 4(f)(3) must also satisfy the requirements of due process. In this context, "due process requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tracfone*, 278 F.R.D. at 692 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Plaintiffs' proposed methods of service easily meet this standard: Mr. Hamdoun is one of LCB's two liquidators. *See* Hamdoun Declaration, Exhibit A. Documents addressed to defendant Hamdoun and delivered to the LCB's Beirut office will therefore reach Hamdoun. Additionally, the law firm, Squire Patton Boggs represents Hamdoun personally in the *Lelchook* case, and it represents LCB under Hamdoun's supervision in the *Kaplan* case. *See* Exhibit A. Therefore, service upon Hamdoun through his lawyers is also certain to reach him. And needless to say, delivery by a reputable international courier service such as FedEx, DHL or UPS is an extremely reliable

method of delivery. Thus, Plaintiffs' proposed methods of service upon Hamdoun are considerably more than merely "reasonably calculated, under all the circumstances, to apprise" defendant Hamdoun of this action.

The proposed method of serving Safa is also more than "reasonably calculated, under all the circumstances, to apprise" him of this action. Plaintiffs propose serving Safa through Nixon Peabody, the law firm that represents him in the *Lelchook* case. Significantly, when contacted with a request that Safa waive formal service, Daniel Schnapp, the Nixon Peabody lawyer who serves as Safa's lead counsel in *Lelchook*, responded by saying that he would "respond by the end of this week," indicating that he was in contact with Safa, and simply needed to clarify whether the Defendant would agree to waive service. *See* Daniel Schnapp email dated August 2, 2022, Exhibit B.

Courts in this district have authorized service both by international courier and through a party's United States counsel. *See e.g.*, *Oueiss v. Al Saud*, 2021 WL 5088942, at *8 (S.D. Fla. Jan. 18, 2021) (permitting service by courier, email, and through U.S.-based counsel for different foreign defendants); *TracFone Wireless, Inc. v. Distelec Distribuciones Electronicas, S.A. de DV*, 268 F.R.D. 687, 690–91 (S.D. Fla. 2010) (permitting service via FedEx and by hand-delivery to Defendant's attorneys in the United States).

In the event that the Court does not direct the Plaintiffs to serve Defendant Safa through his U.S. counsel, Plaintiffs request leave to serve a subpoena upon Mr. Schnapp and Nixon Peabody LLP requiring them to provide Plaintiffs with Safa's contact information. Under Rule 26(d)(1), a federal court may, and generally should, authorize targeted discovery at the outset of an action in order to identify the name and/or address of a defendant. *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203 (D.C. Cir. 2020). *Cf. Knight v. Oklahoma ex rel. Oklahoma Dep't of Pub. Safety*, (N.D. Okla. Apr. 12, 2022) (authorizing limited Rule 26(d)(1) discovery to obtain name

6

and contact information of defendant); *N. Atl. Operating Co., Inc. v. JingJing Huang*, 194 F. Supp. 3d 634, 637 (E.D. Mich. 2016) (seeking names and addresses of parties sued under their usernames); *Council on Am. Islamic Rels.-Minn. v. Atlas Aegis, LLC*, 497 F. Supp. 3d 371, 380-81 (D. Minn. 2020) (seeking names and contact information of Doe co-defendants); *Trainor v. Doe*, 2022 WL 444396 (D. Colo. Feb. 14, 2022) (same).

   d. **Attempting Service Under Rule 4(f)(2)(C)(ii) Is Not Practicable in This Case.**

Given defendant Hamdoun's role as one of only two liquidators of LCB, there is no question that documents addressed to Hamdoun and delivered to LCB at its Beirut office will in fact reach defendant Hamdoun. However, given Hamdoun's seniority at LCB, it is extremely likely that Hamdoun does not personally handle or sign for incoming mail, and that a secretary, receptionist, or mailroom clerk deals with those tasks. Moreover, there is no way to ensure that Hamdoun will be present at his LCB office when the package containing the summons and complaint arrived. These circumstances strongly militate against attempting to effect service on defendant Hamdoun pursuant to Fed. R. Civ. P. 4(f)(2)(C)(ii), which allows service outside the United States on an individual defendant "using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt."[1]

Service under Rule 4(f)(2)(C)(ii) is clearly not practicable as to defendant Safa as Plaintiffs have only his lawyer's contact information. It is also not practicable for service upon Hamdoun because courts have construed that rule to require personal service to the defendant and have held that delivery to the defendant's workplace is not sufficient. "In this case, the receipts were signed

---

[1] As discussed, Rule 4(f)(3) contains no exhaustion requirement, and Plaintiffs may utilize Rule 4(f)(3) (with leave of the Court) without any showing that other methods of service are unavailable. Nonetheless, because Rule 4(f)(2)(C)(ii) is a commonly-used method of service on overseas defendants, and the Court might otherwise question why plaintiffs are not resorting to that method, plaintiffs believe it is appropriate (albeit not required) to explain why they cannot do so in this case.

by receptionists at Romero's place of work, not by Romero himself. There is no other evidence in the record indicating Romero received the summons and complaint; therefore, Romero was not properly served under Rule 4(f)(2)(C)(ii)." *Intelsat Corp. v. Multivision TV LLC*, 736 F. Supp. 2d 1334, 1342 (S.D. Fla. 2010). *Cf. Naseer v. Mirabella Found.*, 2009 WL 10706236, at *2 (M.D. Fla. May 21, 2009) (service on defendant's purported workplace ineffective under Rule 4(f)(2)(C)(ii) absent "receipt signed by" defendant himself or "other evidence of delivery of the summons and complaint to" defendant).

Though plaintiffs believe this construction of Rule 4(f)(2)(C)(ii) is overly narrow, and while it is true (as far as plaintiffs can determine) that the Eleventh Circuit has not ruled whether Rule 4(f)(2)(C)(ii) requires personal delivery, it would be a waste of judicial and party resources to litigate this question here (particularly since, as discussed below, permitting alternative service under Rule 4(f)(3) obviates any such debate).

e. **Defendants' Litigation History Supports the Motion.**

Avoiding future disputes over the validity of service on Hamdoun and Safa is especially advisable in light of the history of service of process in related civil actions. For example, *Licci v. LCB*, No. 505931/2015 (Sup. Ct. N.Y. Kings County), is an action against LCB brought in New York State court by civilians injured in rocket attacks carried out by Hezbollah in 2006. On April 26, 2017, the *Licci* court entered a default against LCB, after it failed to respond to the complaint. (*Id*. at NYSCEF No. 58). Six months later, **after** the *Licci* plaintiffs had **already** filed their damages evidence in support of their motion for default judgment, LCB appeared and moved to vacate default. (*Id*. at Nos. 67-81). In support of that motion, Hamdoun submitted an Affirmation in his capacity as co-liquidator (together with co-defendant Abou Jaoude) of LCB. Exhibit C hereto.

8

Hamdoun admitted in his Affirmation that LCB had decided to ignore service of process in the *Licci* action, because counsel had informed him that the service was not valid. (*Id*. at ¶¶ 9, 11).

Similarly, in *Kaplan*, the Second Circuit found that the plaintiffs stated a valid ATA aiding and abetting claim against LCB, and remanded the case to the district court for further proceedings. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021). After the remand, LCB failed to file an answer, and its default was entered. LCB moved to vacate the default many months after its answer was due, and in support of that motion submitted a declaration from defendants Hamdoun and Abou Jaoude explaining that the failure to answer the *Kaplan* complaint and the default, had resulted from a purported "misunderstanding" with counsel. Exhibit A at ¶ 7.

In light of this history, Plaintiffs here are understandably desirous of eliminating (or at least reducing to an absolute minimum) any opportunities for Defendants to engage in similar conduct in this action regarding service of process, which will only waste the time and resources of the Court and the Plaintiffs, and delay the orderly progress of the case. Neither the Plaintiffs nor the Court should open the door here to potential *post-hoc* (or even post-default) arguments from any of these Defendants based on similar claims of poor advice from counsel and/or putative "misunderstandings,"

 f. **The Court Should Permit Service Under Rule 4(f)(3)**

Both Hamdoun and Safa are certain to receive documents sent to them *via* their U.S. counsel who presently represent them in similar terrorism financing cases. Defendant Hamdoun is also certain to receive documents delivered to him at LCB. As discussed, Hamdoun is one of only two liquidators of LCB. He has held that position for approximately ten years. And prior to being named liquidator of LCB he was the second most senior office of LCB (out-ranked only by co-defendant Abou Jaoude). Given the certainty that Hamdoun will receive documents addressed to

him and delivered to the LCB office (on the one hand), but the improbability that Hamdoun would personally receive the documents in-hand from the courier (on the other hand), plaintiffs should be authorized, pursuant to Rule 4(f)(3), to serve Hamdoun by sending the summons and complaint by an international courier company (*e.g.*, FedEx, DHL or UPS) to LCB's Beirut office.

**WHEREFORE**, the Plaintiffs' motion should be granted.

November 17, 2022

                                            Plaintiffs, by their attorney,

By:   /s/ Asher Perlin
       Law Office of Asher Perlin
       Florida Bar No. 0979112
       4600 Sheridan Street, Suite 303
       Hollywood, Florida 33021
       Tel. 786-687-0404
       Email: asherperlin@gmail.com
       *Counsel for Plaintiffs*