SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------- x
YAAKOV LICCI, a minor, by his father and
natural guardian ELIHAV LICCI, and by his
mother and natural guardian YEHUDIT LICCI, *et al.*,

               Plaintiffs,

               -against-

LEBANESE CANADIAN BANK, SAL,

               Defendant.
-------------------------------------------------------------- x

Index No.: 505931/2015

**AFFIRMATION OF MOHAMAD IBRAHIM HAMDOUN**

Motion Sequence No. 2

I, Mohamad Ibrahim Hamdoun, affirm the following under penalty of perjury pursuant to CPLR § 2106(b):

1. I am one of the two Liquidation Trustees for Lebanese Canadian Bank, SAL ("LCB"). I have personal knowledge of the matters set forth in this affirmation and can competently testify to these statements if called as a witness. I speak and read English, but I have had assistance from counsel in the phrasing of technical aspects of this affirmation, which I respectfully submit in support of LCB's motion to vacate the default entered against LCB in this case.

2. LCB is a Lebanese bank based in Beirut, Lebanon, currently in the process of liquidation in Lebanon under procedures established by Lebanese law.

3. As a Liquidation Trustee for LCB, my duties, among others, include disposing of LCB's assets in a manner designed to maximize the amount available for creditors and prioritizing the budgeting of LCB's expenditures to creditors in a manner that complies with the requirements of the laws of Lebanon.

1

4.  Through counsel other than those representing LCB in this lawsuit, and continuously for more than nine years since August 2008, LCB has been actively defending claims in U.S. federal court proceedings brought by the same plaintiffs who brought this lawsuit (the "*Licci* federal case"). The claims in the *Licci* federal case originally included the Israeli-law claims that were brought in this case (the "*Licci* state case") in 2015, after they were dismissed by the federal court for lack of federal jurisdiction. All claims in both the *Licci* federal case and the *Licci* state case are based on the same set of factual allegations against LCB.

5.  The *Licci* federal case originally was filed on July 11, 2008 in New York State court, under the caption *Licci, et al. v. American Express Bank Ltd. et al.*, Index No. 109548/08 (Supreme Court, New York County). The case was removed to the U.S. District Court for the Southern District of New York, where it was captioned, *Licci, et al. v. Lebanese Canadian Bank, SAL, et al.*, Case No. 1:08-cv-7253. The *Licci* federal case has generated multiple appellate decisions, including four from the U.S. Court of Appeals for the Second Circuit and one from the New York Court of Appeals on a certified question. After an initial dismissal, appeal, and remand, the Second Circuit Court of Appeals dismissed the *Licci* federal case in 2016. The *Licci* federal case plaintiffs then filed a petition for writ of certiorari to the U.S. Supreme Court, which LCB opposed. *Licci v. Lebanese Canadian Bank*, No. 16-778, 2016 U.S. Briefs 778 (U.S. Feb. 17, 2017). The Supreme Court has not yet ruled on that petition for certiorari.

6.  I recite all of this history of the *Licci* federal case to show that it has always been LCB's intent to defend itself, fully and on the merits, against the plaintiffs' allegations against LCB, which are the same in this lawsuit as they are in the *Licci* federal case

7.  I understand that the *Licci* plaintiffs attempted various ways to serve the summons and complaint in this lawsuit. However, I understand that the plaintiffs did not attempt to serve

2 

process directly on LCB or on its Liquidation Trustees, despite the fact that the identity of LCB's Liquidators has been known to the plaintiffs ever since they began their efforts to serve process on LCB. Specifically, it is my understanding that, when the plaintiffs began their efforts to serve process on LCB, they provided this Court a copy of a Stipulation and Order of Settlement, dated June 20, 2013, in the case captioned, *United States v. Lebanese Canadian Bank SAL, et al.*, Case No. 1:11-cv-9186 (S.D.N.Y.) (Dkt. Number 462). On page 15 of that Stipulation, I signed on behalf of LCB in my capacity as one of the two Liquidators of LCB, along with Georges Zard Abou Jaoude, who is the other Liquidator of LCB. I do not understand why the plaintiffs did not make any effort to serve LCB by serving papers on me and on Mr. Abou Jaoude as the Liquidators of LCB who had acted on LCB's behalf in other court proceedings. In addition, the identity of LCB's Liquidation Trustees has been a matter of public record in other U.S. court proceedings, such as the complaint filed in a federal case captioned *Abu Nahl, et al. v. Abou Jaoude, et al.*, Case No. 1:15-cv-9755 (S.D.N.Y.), in which LCB also is named as a party (the "*Abu Nahl* case"). Again, there, both Mr. Abou Jaoude and I are identified in that complaint, in paragraphs 10-11, as the Liquidators of LCB. I understand that a simple PACER search of federal court records, using the search term "Lebanese Canadian Bank" would have provided the identity of LCB's liquidators. This information therefore was publicly available from the time the complaint was filed in the *Abu Nahl* case on December 14, 2015, many months before the plaintiffs commenced their efforts to serve process in this lawsuit, which I understand was in May 2016.

8. Sometime in or after August 2016, I learned from Lebanese counsel for LCB that the plaintiffs had delivered a summons and complaint in this case to Societe Generale de Banque au Liban SAL ("SGBL") by Federal Express to SGBL's office in Beirut. Several years earlier,

3

SGBL had acquired material assets and liabilities of LCB through a June 22, 2011 Sales and Purchase Agreement ("SPA"). However, despite the SPA, LCB remained in existence as a liquidating entity that could sue and be sued, according to my understanding of Lebanese law. Also, under the terms of the SPA, SGBL did not assume financial or legal responsibility for any aspect of the *Licci* litigation.

9. In subsequent discussions, I understood from LCB's Lebanese counsel that the methods used by the plaintiffs to serve process in this lawsuit did not comply with, and were not effective to complete service of process under, Lebanese law. As a result, it was my understanding that any judgment obtained by the plaintiffs in this lawsuit would not be valid or enforceable in Lebanon, under Lebanese law.

10. Additionally, based on those discussions, I understood that any judgment obtained by the plaintiffs in this lawsuit would not be valid or enforceable in Lebanon, under Lebanese law, because, under Lebanese law, the plaintiffs had litigated and lost claims in the *Licci* federal case that are based on the same factual allegations made in this case.

11. Based on those understandings, I and LCB's other Liquidation Trustee understood that LCB did not have a legal obligation to appear in and defend this case.

12. On Monday, September 11, 2017, I learned from the legal counsel who represent the LCB Liquidation Trustees in the *Abu Nahl* case, that this Court had entered a default judgment against LCB in this case. I understand that our counsel in the *Abu Nahl* case first learned of the default judgment in this lawsuit late on Saturday, September 9, 2017, while researching the status of the federal *Licci* litigation, for purposes of a motion due in the *Abu Nahl* case. As soon as Mr. Abou Jaoude and I received that information, and in our capacity as a Liquidation Trustees, we engaged our counsel in the *Abu Nahl* case to represent LCB in this

4 

case, defend these proceedings, file a motion to vacate the default judgment, and seek an adjournment of the inquest scheduled for September 18 pending LCB's motion to vacate default. I understand that LCB's counsel did so immediately on the morning of Wednesday, September 13, which resulted in the Stipulation entered in this case on Thursday, September 14.

13. Since then, LCB, through its Liquidation Trustees, has been actively assisting its U.S. counsel in preparing LCB's motion to vacate all defaults entered against LCB in this case, including by reviewing the information that establishes LCB's meritorious defenses to plaintiffs' claims.

14. Based on those efforts, and based on my knowledge of the parallel proceedings in the *Licci* federal case, it is my understanding and belief that LCB has several substantial meritorious defenses to plaintiffs' claims, as explained in detail in the Memorandum of Law supporting LCB's motion to vacate defaults which I have read and adopt in this affirmation.

15. For all of the reasons explained in this affirmation, LCB respectfully requests that this Court vacate all defaults entered against LCB in this case and allow LCB to defend itself fully and on the merits against the plaintiffs' claims.

I affirm this 30th day of October, 2017, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment; that I am physically located outside the geographic boundaries of the United States, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States; that the foregoing is true; and I understand that this document may be filed in an action or proceeding in a court of law.

_____
Mohamad Ibrahim Hamdoun