# EXHIBIT A

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   ESTER LELCHOOK, *et al.*,

4                    Plaintiffs,              New York, N.Y.

5            v.                               18 Civ. 12401 (GBD)

6   MOHAMED HAMDOUN,
    LEBANESE CANADIAN BANK,
7
                     Defendants.
8
    ------------------------------x
9
                                            February 1, 2023
10                                          10:40 a.m.

11  Before:

12                    HON. GEORGE B. DANIELS,

13                                          U.S. District Judge

14

15                            APPEARANCES

16

17

18  THE BERKMAN LAW OFFICE, LLC
         Attorneys for Plaintiffs
19  BY:  ROBERT J. TOLCHIN

20  SQUIRE PATTON BOGGS (US) LLP
         Attorneys for Defendants
21  BY:  MITCHELL R. BERGER
         GASSAN A. BALOUL
22       JOSEPH S. ALONZO

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

N215LELA

1          (Case called)

2          THE DEPUTY CLERK:  Will the parties please rise and

3    make they are appearances, beginning with the plaintiff.

4          MR. TOLCHIN:  Good morning, your Honor.  Robert

5    Tolchin from The Berkman Law Office.

6          THE COURT:  Good morning.

7          MR. TOLCHIN:  For the plaintiffs.

8          MR. BERGER:  Good morning, your Honor.  Mitchell

9    Berger from Squire Patton Boggs for the defendants, along with

10   my colleagues, Gassan Baloul and Joseph Alonzo.

11         THE COURT:  Good morning.

12         MR. BERGER:  Good morning, your Honor.

13         THE COURT:  Who wants to be heard on the motion?

14         MR. BERGER:  Your Honor, I will speak for the

15   defendants, and I didn't know if it was the Court's preference

16   if I speak from here or the podium.

17         THE COURT:  Either one, Mr. Berger.

18         MR. BERGER:  Thank you, your Honor.

19         Your Honor, the Court, of course, knows an enormous

20   amount about the claims made in the Lelchook litigation because

21   with one important exception that I want to address today, the

22   Lelchook litigation is the same as the Licci litigation that

23   your Honor has been presiding over since 2008.  The important

24   exception or the focus of my argument today is going to be that

25   Mr. Mohamed Hamdoun is named as an individual defendant in the

N215LELA

1    Lelchook case where he is not named in the Licci litigation,

2    and that is even though the allegations in both cases are based

3    on the same U.S. government allegations expressly incorporated

4    in the complaint first made by the government back in 2011, and

5    nothing else.  In other words, the decision to bring

6    Mr. Hamdoun in this litigation, the Lelchook case, was not

7    based on anything that the plaintiffs learned over the course

8    of a decade in the Licci case that your Honor was handling.  To

9    the contrary, this case was filed the last day of December,

10   2018, just before the statute of limitations was expired and

11   plaintiffs made the tactical decision this time not only to

12   name LCB, but this time also to name Mr. Mohamed Hamdoun as an

13   individual defendant and he, of course, has been known, for

14   years to the plaintiffs, because he is one of the two

15   liquidators of LCB, which is a bank in liquidation in Lebanon.

16          Now, there is a world of difference between suing LCB

17   and that case is going to go forward because it has been over

18   in the New York Court of Appeals, it has been up and down in

19   the Second Circuit.  The case against LCB will go forward.  The

20   main question I want to address to the Court today is whether

21   it appropriately goes forward as well against Mr. Mohamed

22   Hamdoun individually, and our position is that Mr. Hamdoun

23   should not be forced to litigate at the risk of personal

24   liability in this case when plaintiffs' last minute decision to

25   add him before the statute of limitations expired is based not

N215LELA

|     |
| --- |
| 1 | only on nothing new, but is based on the allegations against
| 2 | LCB and LCB alone, made in the U.S. government's forfeiture
| 3 | complaint way back in 2011 and then amended in 2012.  And
| 4 | that's important because the plaintiffs, in paragraph 104 of
| 5 | their amended complaint, expressly incorporated the
| 6 | government's forfeiture complaint into their complaint and that
| 7 | means that the extrinsic evidence regarding the forfeiture
| 8 | complaint proceedings is fair play before your Honor on a
| 9 | motion to dismiss, whether we are looking at the 12(b)(6)
| 10 | portion of the motion to dismiss or at the 12(b)(2) portion of
| 11 | the motion to dismiss.  And here is why that's important:  The
| 12 | extrinsic evidence about the forfeiture complaint on which this
| 13 | complaint is based conclusively demonstrates the implausibility
| 14 | of the individual liability allegations against Mr. Hamdoun and
| 15 | here is why:  The test before your Honor, whether it is on
| 16 | 12(b)(2) or 12(b)(6) on the motion to dismiss Mr. Hamdoun is
| 17 | substantively the same.  The question is does the amended
| 18 | Lelchook complaint plausibly allege that Mr. Hamdoun personally
| 19 | and knowingly participated in LCB's alleged funding of
| 20 | Hezbollah.  Personally and knowingly.  And that is important
| 21 | because I suspect the first thing Mr. Tolchin is going to say
| 22 | to you is Mr. Hamdoun is bound by what the Second Circuit did,
| 23 | this case is already going forward as to LCB.  And that's
| 24 | simply not correct, standards of liability, whether under New
| 25 | York law or under federal law for a corporate officer to be

N215LELA

1    held individually liable, that they personally and knowingly

2    participated in the alleged wrongdoing of the corporation.

3    There is nothing in any of the Second Circuit's decisions in

4    this case, either the Licci case, nothing in the Court of

5    Appeals decision in the Licci case, nothing in any of your

6    Honor's earlier decisions in the Licci case that addresses the

7    question of whether Mr. Mohamed Hamdoun, personally and

8    knowingly, participated in LCB's alleged wrongdoing.

9            But, we do know a lot, and a lot of information that

10   we know comes from the extrinsic evidence relating to the

11   forfeiture proceeding.  And here is why:  For starters, the

12   government's forfeiture complaint does not mention Mr. Hamdoun

13   at all.  He is never named in the complaint as having done

14   anything wrong.  As importantly, when the government settled

15   the forfeiture proceedings with LCB in 2013, it filed in this

16   court a stipulation of settlement that expressed terms between

17   the parties.  Most importantly, the stipulation of

18   settlement -- and of course, your Honor, this is all addressed

19   in my papers but I want to highlight this -- the stipulation of

20   settlement listed the government's disclaimer that said as to

21   the following former LCB officers, directors or shareholders,

22   the government does not have a claim.  The forfeiture complaint

23   does not allege that they committed LCB's alleged wrongdoing.

24   Among the people listed in the stipulation of settlement as to

25   which the United States government has said we don't have a

N215LELA

1    claim was Mr. Hamdoun.  So, it is there in plain terms, in

2    black and white, in a stipulation of settlement.

3           THE COURT:  Well, I'm not sure -- and you can quote

4    the language for me, I'm not sure the stipulation exonerated

5    Mr. Hamdoun.

6           MR. BERGER:  What it said is the government's

7    forfeiture complaint did not state a claim against Mr. Hamdoun

8    and others.  And that's important and here is why, and I can

9    turn to the language in the stipulation of settlement, your

10   Honor, which, of course, is before the Court in the Court's

11   records.

12          THE COURT:  But are you arguing that it is, in and of

13   itself, a determination that he has no liability and is not

14   personally and knowingly a participant?

15          MR. BERGER:  I have a slightly different angle on that

16   point, your Honor, which is to get past a 12(b)(6) motion or

17   12(b)(2) motion, plaintiffs need to persuade the Court that

18   they have plausibly alleged -- plausibly alleged -- not just

19   possibly alleged but plausibly alleged -- that Mr. Hamdoun is

20   personally and knowingly is responsible for LCB's wrongdoing.

21          On the plausibility determination, as your Honor

22   appreciates, ordinarily the Court is constrained by the four

23   corners of the complaint.  Here, the Court is not, because the

24   complaint incorporates the forfeiture proceedings.  So, what I

25   am saying to your Honor is not that this is a res judicata

N215LELA

1   issue, not that there is some binding determination, but that

2   on the plausibility determination that plaintiffs, when they

3   have incorporated in the forfeiture complaint, cannot get over

4   the bar of plausibility when all of the evidence, as well as

5   the allegations before your Honor, are that the government has

6   said the allegations that plaintiffs here have copied as to LCB

7   do not implicate Mr. Hamdoun.

8           THE COURT:  But I'm not sure that that translates into

9   a factual determination by the government that is preclusive in

10  a separate lawsuit that alleges his direct participation.

11          MR. BERGER:  We don't argue that it is preclusive.  We

12  argue that it renders the allegations implausible.  It doesn't

13  have to be conclusive and there is more to it than that.

14          THE COURT:  If the government says we are going to

15  arrest someone for committing a crime and they arrest a driver

16  of a car, the get-away car, and the co-defendant is a passenger

17  in the get-away car.  Simply because the government says we

18  don't have evidence that the passenger is a participant in the

19  crime doesn't preclude a lawsuit by someone if they can

20  sufficiently allege that that person participated in a crime

21  and stole their money.

22          MR. BERGER:  Right.

23          So, your Honor, I think that analogy is actually

24  helpful to me and let me explain why.  If the government were

25  to say there are two people in a car, we have arrested one

N215LELA

1    because we have probable cause to believe that they committed a

2    crime but we haven't arrested another because we don't have

3    probable cause to believe, the probable cause standard and the

4    plausibility standard that applies on a 12(b)(6) motion are

5    usefully equivalent in this circumstance.  What the government,

6    therefore, I think, can be read as saying in the stipulation of

7    settlement is we didn't have probable cause to believe that

8    Mr. Hamdoun personally and knowingly engaged in this activity.

9    And that's consequential, because to ignore what the government

10   said in the stipulation of settlement and simply say I'm going

11   to turn blinders to that and look only at the four corners of

12   the complaint, is really to let the plaintiffs have their cake

13   and eat it to.  They can't say on the one hand you should find

14   my complaint plausible against LCB and Mr. Hamdoun because the

15   government said similar things that we incorporate into

16   paragraph 104.  And it says we expressly, in paragraph 104,

17   incorporate the allegations of the forfeiture.  So, it has to

18   mean something, that something happened in the forfeiture

19   proceedings.

20            THE COURT:  Well, I'm still not clear about what the

21   forfeiture complaint said, factually, about Mr. Hamdoun.

22            MR. BERGER:  It says nothing about Mr. Hamdoun.

23            THE COURT:  Right.

24            MR. BERGER:  But here is what --

25            THE COURT:  Nothing is not a fact.

N215LELA

| | |
|---|---|
| 1 | MR. BERGER:  If it were only the complaint then your |
| 2 | Honor would be right, but there is, indeed, not only the |
| 3 | complaint amended in 2012, but there is the stipulation of |
| 4 | settlement in 2013 and there Mr. Hamdoun is mentioned in the |
| 5 | context of the government saying the forfeiture complaint |
| 6 | doesn't state a claim against these following officers -- |
| 7 | THE COURT:  Right. |
| 8 | MR. BERGER:  -- including Mr. Hamdoun.  But there is |
| 9 | more, your Honor, and I'm not asking you to rest exclusively on |
| 10 | this.  What I am asking the Court to do is to say we can't |
| 11 | pretend that the forfeiture complaint wasn't settled with this |
| 12 | statement by the government.  It means something.  It goes into |
| 13 | the plausibility equation.  But, there is more. |
| 14 | When you take the forfeiture complaint, the forfeiture |
| 15 | complaint makes allegations against LCB.  It is the same theory |
| 16 | of liability against LCB that the plaintiffs have used here and |
| 17 | that they used in the Licci case.  Let's look at some |
| 18 | additional comparisons. |
| 19 | The forfeiture complaint says one officer of LCB was |
| 20 | personally and knowingly involved in managing the so-called |
| 21 | Hezbollah accounts.  Who is that one officer?  It is not |
| 22 | Mr. Hamdoun, it is another person named Ahmed Safa.  That's |
| 23 | important, because when the government settled the forfeiture |
| 24 | complaint it didn't disclaim any claim against Mr. Safa, it |
| 25 | reserved a claim against Mr. Safa.  Now let's shift focus back |

N215LELA

| | |
|---|---|
| 1 | to the amended complaint here.  What does it say?  It says |
| 2 | there is one officer of LCB who was personally and knowingly |
| 3 | involved in managing the so-called Hezbollah accounts; |
| 4 | paragraphs 61 and 62.  Who is that person?  Mr. Safa. |
| 5 | THE COURT:  Right, but it doesn't say he is the only |
| 6 | person. |
| 7 | MR. BERGER:  No.  Indeed, the complaint then tries, in |
| 8 | the antecedent paragraphs, 58 through 60, to allege that |
| 9 | Mr. Hamdoun was involved.  But what does it say as to |
| 10 | Mr. Hamdoun?  It doesn't say, oh, we know this because the |
| 11 | forfeiture complaint alleges it.  It says -- and this is |
| 12 | crucial -- in making the determination Mr. Hamdoun, due to his |
| 13 | positions, quote unquote. |
| 14 | THE COURT:  Sorry.  Where are you quoting from? |
| 15 | MR. BERGER:  Paragraphs 57 and 58 of the amended |
| 16 | complaint, your Honor.  It has this information in it. |
| 17 | THE COURT:  Right, but you just quoted what paragraph? |
| 18 | MR. BERGER:  From both 57 and 58 of the amended |
| 19 | complaint. |
| 20 | So, it says that during the years of the Hezbollah |
| 21 | rocket attacks -- now quoting from paragraph 57. |
| 22 | THE COURT:  Right. |
| 23 | MR. BERGER:  -- defendant Hamdoun had multiple |
| 24 | overlapping positions of power in LCB's corporate hierarchy and |
| 25 | then, in A, B, C, D, it lists those so called positions.  Not |

N215LELA

1    my word, plaintiff's word in the complaint "position."

2           Paragraph 58 says these positions -- again, their

3    word, not mine -- made him one of the most senior managers in

4    LCB, gave him control over LCB's policies and activities and he

5    enjoyed control.  It is Hornbook law, your Honor -- couldn't be

6    clearer, and again, it is in our brief -- that individual

7    corporate liability, the knowing and personal participation

8    standard, cannot be based on corporate positions.  We have

9    briefed that in our case in our briefs, that the law is clear

10   on that, that status within a corporation or merely by reason

11   of office cannot result in individual liability.  The *Trisvan*

12   decision, the *Shostack* decision, the *In Re: Lyman* decision, all

13   say that.

14          When you look at the four corners of the amended

15   complaint, even if you were to look at nothing more than that

16   complaint and not the forfeiture complaint, you would see a

17   world of difference between what's alleged against Mr. Hamdoun,

18   which is his positions in the corporation gave him control, and

19   what is alleged in the ensuing paragraphs against Mr. Safa,

20   which says he had day-to-day control over the Hezbollah

21   accounts.  Now, that is a qualitative difference and you might

22   say, well, it doesn't mean they both can't be held liable in

23   this case.  But, our argument is that that difference matters

24   and that is where your Honor, in making the plausibility

25   determination, has to look at the plus factor of what we know

N215LELA

1      from the forfeiture complaint.  Two things.  Number one, the

2      forfeiture complaint, in several places, alleges the same thing

3      about Mr. Safa.  It says Mr. Safa personally ran LCB's business

4      with the so-called Hezbollah accounts.  You can find that at

5      paragraph 57(g) at pages 31 to 34 of the forfeiture complaint,

6      and at 48(d) at page 36 of the forfeiture complaint.  No

7      similar allegations against Mr. Hamdoun.

8              THE COURT:  Well, there is an allegation in paragraph

9      60 that says Mr. Hamdoun personally initiated and authorized

10     LCB's banking relationship with Hezbollah.

11             MR. BERGER:  And that, your Honor, as noted, is

12     textbook conclusory pleading and it is equally clear, under

13     both New York and federal law, that a conclusory allegation of

14     individual liability of a corporate officer is not enough.  The

15     *Pet Edge* case that we cited says conclusory allegations are not

16     enough.  What is enough -- and I would refer your Honor to the

17     *FTC v. Quincy Biosciences* case we cited -- instead, plaintiff's

18     must allege precise facts that show that the individual

19     corporate officer had both authority to control the corporation

20     and knowledge of the relevant acts.  It is also the *Steve*

21     *Madden* decision we cited.

22             THE COURT:  Well, what do you say that initiating and

23     authorizing LCB's banking relationship with Hezbollah, what do

24     you say that is other than an allegation that he approved and

25     was personally instrumental in establishing this banking

N215LELA

1  relationship with Hezbollah?

2          MR. BERGER:  I understand that that's insufficient

3  because what does it derive from paragraph 60 is the language.

4          THE COURT:  Say that again?  I didn't hear.

5          MR. BERGER:  It is insufficient, your Honor, because

6  it is the wind-up conclusion of what is in paragraphs 57, 58.

7  And what does 57 and 58 say?  He had corporate positions.  It

8  is a conclusion.  Conclusory paragraphs aren't enough,

9  particularly when it is clear from the context of the complaint

10  and you can't read paragraph 60 out of the context of 57 and

11  58.  It says the only reason to give when you are required to

12  give precise facts in a pleading, under *FTC v. Quincy*

13  *Biosciences* and *Steven Madden*, it says it must be true because

14  of his position.  But you also can't look at that --

15          THE COURT:  Well, I'm not sure that that's in

16  paragraph 66.  It doesn't say that that must be true simply

17  because of his position.

18          MR. BERGER:  Well, it doesn't --

19          THE COURT:  Seeing he initiated it and he authorized

20  it.

21          MR. BERGER:  And that allegation, your Honor, has to

22  be based on something plausible.  And what does the complaint

23  tell us as the plausible basis for that?  Because, again, the

24  plausibility standard governs here -- all it tells us, within

25  the four corners of the complaint as to plausibility, is that

N215LELA

 1   it was based on his corporate positions but your Honor

 2   cannot --

 3        THE COURT:  Well, no.  It doesn't say that.  I mean,

 4   I'm not sure -- I mean you are saying that paragraph 60 -- and

 5   you may be right in the context -- but you are saying that

 6   paragraph 60 is simply based on 58 and 59 and is not

 7   independently asserting a fact of active authorization of this

 8   banking relationship.

 9        MR. BERGER:  Let's assume for a moment, your Honor,

10   let's put aside the rest of the context and let me take it in

11   its own terms.  On its own terms it doesn't meet the precise

12   facts standard of the *Steven Madden* case and *Quincy*

13   *Biosciences*.  What it does do is simply articulate a

14   conclusion.  But, as I said at the outset, your Honor, in

15   making the plausibility determination -- is that a plausible

16   allegation -- cannot, must not, should not ignore what we know

17   from the forfeiture proceedings.  And we know plenty from the

18   forfeiture proceedings, which is that the government, itself,

19   didn't think it was plausible to allege this against

20   Mr. Hamdoun but did think it was plausible to allege it against

21   Mr. Safa.  You can't, as I say, have it both ways.  You can't

22   say on the one hand give me plaintiff's contact credibility of

23   my allegations because the government made them, but then run

24   away from the necessary consequence of what the government said

25   in resolving that, which is we don't have a claim against

N215LELA

1    Hamdoun, we do as against Safa.

2           Now, I also believe, your Honor, that actions speak

3    louder than words.  Fascinating, that in the original iteration

4    of this complaint, Mr. Safa was named as a defendant.  He was

5    dropped when the plaintiffs amended their complaint because

6    surely we are trying to avoid the clear comparison between the

7    articulated culpability of Mr. Safa and the conclusory

8    allegations against Mr. Hamdoun.  All they have now said is

9    they left allegations against Mr. Safa in but they've said that

10   he controlled Mr. Safa and then they haven't sued him

11   individually.

12          All I am saying, your Honor, the goose and gander rule

13   clearly applies here and you cannot, on the one hand, coast on

14   the credibility allegedly given by the government's

15   allegations, and then ignore what the government said in

16   resolving it.

17          Now, Mr. Tolchin will stand up and say, I've got more.

18   In a generic language as to LCB, FINCEN said LCB managers were

19   personally involved in these acts.  Well, a couple of things

20   about that.  Number one, the government withdrew the FINCEN

21   notice but, most importantly, the FINCEN notice preceded in

22   time, by over a year, the first government forfeiture

23   complaint, and preceded by two years the government's

24   stipulation of settlement disclaiming a claim against

25   Mr. Hamdoun.  What I am driving towards with all of this -- and

N215LELA

1    it applies equally to jurisdiction as to 12(b)(6), is that at

2    this late stage in the Licci litigation, to drag Mr. Hamdoun in

3    when all signs indicate that he did not have personal

4    responsibility is an inappropriate use of individual liability.

5           Now, of course, your Honor, there is additional facts

6    that I want to bring to the Court's attention which is I

7    understand your Honor is focused on a motion to dismiss,

8    necessarily, but your Honor also has sent us to Magistrate

9    Judge Parker to supervise discovery.  Document production has

10   been made in that case.

11          While your Honor is focused on a Rule 12 motion today,

12   the documents that we have produced to plaintiffs show that,

13   indeed, Mr. Hamdoun did not have the alleged responsibility for

14   accounts that plaintiffs alleged.  So, we believe that on its

15   own terms, a Rule 12 motion can be granted.  However, it is

16   equally possible for Mr. Hamdoun to make an expedited motion

17   for summary judgment based upon the fact of the documents we

18   have produced which corroborate the same arguments made on a

19   Rule 12(b).

20          And one other factor, your Honor.  In the Southern

21   District of Florida there is a look-alike case pending against

22   Mr. Hamdoun, Mr. Safa, and the second liquidator of LCB.  That

23   is the subject of a motion to dismiss in which the Court can

24   take judicial notice that was filed last Friday, the 27th.  In

25   that litigation, the Menashe litigation, Mr. Hamdoun filed an

N215LELA

| | |
|---|---|
| 1 | affidavit that is also consistent with what I am telling you. |
| 2 | And I don't expect your Honor to take judicial notice of the |
| 3 | underlying facts for the truth, but what I am saying is that if |
| 4 | your Honor has any doubt and is disinclined to believe it can |
| 5 | rule on these issues on Rule 12 although we think it can, then |
| 6 | we should be allowed, without burdening Mr. Hamdoun with |
| 7 | proceeding through this case being exposed to individual |
| 8 | discovery, he should be allowed to make a prompt motion for |
| 9 | summary judgment on precisely these arguments because |
| 10 | plaintiffs, at that point, lose the benefit of whatever your |
| 11 | Honor is going to give them on a Rule 12(b)(6) motion because |
| 12 | the facts are the facts, and when we are trying to litigate, |
| 13 | what your Honor knows is this is a case that has had a long |
| 14 | history -- Licci, in tandem with this case -- it is we want to |
| 15 | be able to focus on LCB.  But, to bring in Mr. Hamdoun when he |
| 16 | is the one who daily provides instructions, supervised the |
| 17 | litigation, when he has been brought in for the transparent |
| 18 | purpose of putting pressure on him to trying to force LCB to |
| 19 | settle, that is an inappropriate use of the pleading.  And that |
| 20 | being the case, we are entitled to test the sufficiency of the |
| 21 | allegations against Mr. Hamdoun and get him out at the earliest |
| 22 | possible time so this case can focus on what the Court of |
| 23 | Appeals and the Second Circuit have told us we should focus on, |
| 24 | which is LCB's alleged liability.  But, to bring in Mr. Hamdoun |
| 25 | when neither the law or the facts supports it, is an |

 1   inappropriate effort to impose individual liability.

 2          If the Court doesn't have any other questions I would

 3   like to have some time to reply after I hear what Mr. Tolchin

 4   says.

 5          THE COURT:  Just say something briefly about the

 6   jurisdiction.

 7          MR. BERGER:  Yes, your Honor.

 8          So the test for both 12(b)(2) and 12(b)(6) are

 9   functionally the same.  The 12(b)(6) test is personal and

10   knowing participation.  The 12(b)(2) test is was the defendant

11   a -- quote unquote -- primary actor in the underlying events.

12   So, we have argued that both the allegations and the tests are

13   functionally the same.  Now, plaintiffs have argued that we

14   waived our jurisdictional challenge.  Our answer to that, your

15   Honor, is also set out in our papers, but the test here -- we

16   have some pretty unique circumstances here given plaintiff's

17   desire to withdraw their waiver of amendment -- but the test is

18   when we put in the *Boss Products* case and the *Phat Fashions*

19   case at this point, is if there is some settlements -- some

20   settlements, that's the case's word -- of a jurisdictional

21   challenge in earlier submissions, then that's enough to

22   preserve it.  And so, given the substantive overlap of both the

23   test and the allegations at issue --

24          THE COURT:  Well, I'm not sure I fully understand what

25   you claim is, the substantive overlap.

N215LELA

1          MR. BERGER:  Our argument, your Honor, has been that

2     we have articulated from the outset in the case that the

3     allegations are not sufficient to show that Mr. Hamdoun was

4     either a primary actor or a personal and knowing participant.

5     Functionally the same.

6          THE COURT:  Why is that not a jurisdictional issue?

7          MR. BERGER:  No, I agree, your Honor.  We did not, in

8     those words articulate.

9          THE COURT:  In your brief you did articulate that I

10    should dismiss it on jurisdiction for the lack of personal

11    jurisdiction.

12         MR. BERGER:  Yes, your Honor.  I'm sorry.  I thought

13    your Honor was referring to Mr. Tolchin's argument that in our

14    first motion we didn't articulate it in those terms.

15         THE COURT:  No.  I was directly addressing the ground,

16    the personal jurisdictional ground in which you say that this

17    case should be decided.

18         MR. BERGER:  Then, your Honor, if the primary actor

19    test is what applies in jurisdiction, which is functionally the

20    same as personal and knowing participation that, again, both

21    the comparison of the allegations about Mr. Hamdoun and

22    Mr. Safa, within this complaint, the comparison of the

23    allegations against Mr. Hamdoun and Mr. Safa in the forfeiture

24    complaint, and the comparison between Mr. Hamdoun and Mr. Safa

25    in the stipulation of settlement of the forfeiture complaint,

N215LELA

1   all show that the primary actor test cannot be made as to

2   Mr. Hamdoun.  Who is the primary actor according to both

3   plaintiff's allegations and according to the government's

4   allegation?  Mr. Safa, not Mr. Hamdoun.

5          THE COURT:  But that's a substantive review, not a

6   jurisdictional review.  I mean, the question of whether or

7   not -- I don't get to the question of whether or not the

8   allegations are sufficient if I have no personal jurisdiction

9   over them.

10          I think I understand your argument now, you are sort

11   of arguing, well, when you look at the allegations of the

12   complaint, that when I look at the allegations of the complaint

13   I can say that because the allegations of the complaint are so

14   insufficient the Court lacks jurisdiction personal jurisdiction

15   over the defendant.  I'm not sure that's the appropriate

16   analysis.  I am not even supposed to analyze whether or not it

17   states a cause of action if I don't have personal jurisdiction

18   over them.

19          MR. BERGER:  So, I do think that, your Honor, that

20   this is the exceptional case in the following sense which is

21   the legal standards, primary actor, knowing and personal

22   participant, are roughly the same.  On a 12(b)(2) motion for

23   jurisdiction the Court normally would be entitled to take into

24   account extrinsic evidence but unusually, here, on a 12(b)(6)

25   motion, the Court can take extrinsic evidence into account

N215LELA

1   because it is expressly incorporated into the complaint.  And

2   so, what we have argued --

3            THE COURT:  But that's on the jurisdictional issue,

4   that's not on the 12(b)(6) issue.

5            MR. BERGER:  Your Honor --

6            THE COURT:  I'm supposed to look at the four corners

7   of the complaint.

8            MR. BERGER:  Your Honor, I respectfully disagree.  I

9   think the law is quite clear that when extrinsic evidence is

10  expressly incorporated in the complaint that the Court's

11  12(b)(6) review, like a 12(b)(2) review, may take into account,

12  as though it were pled as part of the four corners of the

13  complaint, extrinsic evidence.

14           THE COURT:  So, what is the extrinsic evidence that

15  you say is incorporated in the complaint?

16           MR. BERGER:  The forfeiture complaint by the

17  government, which is expressly incorporated in those terms in

18  paragraph 104 of the amended complaint and the stipulation of

19  settlement which is how the forfeiture complaint ended.

20           THE COURT:  I know, but you just conceded to me that

21  I'm not supposed to use that as some sort of exoneration of the

22  defendant in this case.

23           MR. BERGER:  I don't have to get to the level, your

24  Honor, of exoneration, I only have to get to the level of

25  implausibility.  And your Honor, respectfully, there is a world

N215LELA

1    of difference between saying exoneration -- and I go back to

2    your Honor's analogy.  All I have to be able to do to win on a

3    12(b)(6) motion is demonstrate the allegations are implausible.

4          THE COURT:  Right, but implausibility is not the

5    standard for jurisdiction.

6          MR. BERGER:  No.  It is basically even worse which is

7    that the plaintiffs actually have to come up with some evidence

8    to overcome what the extrinsic evidence shows.

9          THE COURT:  Well, no.  I mean, I will look at the

10   cases that you have cited for that proposition but I'm not sure

11   that any defendant could walk in and say, Judge, this case

12   is -- the plaintiff has insufficiently alleged liability on

13   behalf of my client so therefore we want you to dismiss it on

14   personal jurisdiction grounds.

15         MR. BERGER:  Your Honor, I don't think we are saying

16   that.

17         THE COURT:  OK.  That's what I am missing.

18         MR. BERGER:  What I am saying is that the quantum of

19   evidence, both for 12(b)(2) and 12(b)(6), is essentially the

20   same, that the usability of that quantum of evidence is

21   slightly different.  In 12(b)(2) you can use extrinsic

22   evidence.  That's clear.  And in 12(b)(6), normally you can't

23   use extrinsic evidence but here you can -- your Honor, there

24   are dozens of additions, as your Honor knows, that say when

25   extrinsic evidence is incorporated into a complaint --

N215LELA

 1          THE COURT:  Right.

 2          MR. BERGER:  -- whether it is by allegation or by

 3  attaching it to the complaint, then the Court has to take that

 4  into account in assessing plausibility.  What I am saying is

 5  put aside plausibility, let's put 12(b)(6) aside.

 6          THE COURT:  Right.

 7          MR. BERGER:  On 12(b)(2) they must demonstrate that

 8  there is a prima facie case and, your Honor, with all your

 9  Honor's jurisdictional decisions in the 9/11 cases, are

10  conversive with the prima facia case standard.  There has to be

11  a prima facie case of jurisdiction.  In order to make a prima

12  facie case of jurisdiction over an individual corporate officer

13  it must show personal and substantial involvement because it is

14  a primary actor.

15          Your Honor, I will use the 9/11 cases again.  Your

16  Honor dismissed bank executives in the 9/11 case and the Second

17  Circuit affirmed, precisely because the only basis for the

18  allegations there were that these were corporate officers in

19  control of the bank.

20          THE COURT:  Right, but I don't think that that was a

21  jurisdictional motion.

22          MR. BERGER:  It was, your Honor.  The corporate -- the

23  bank executives who were dismissed in the 9/11 case --

24          THE COURT:  I thought that was a 12(b)(6) motion but I

25  don't remember specifically.

N215LELA

1          MR. BERGER:  That case has been going on a while, so,

2     yes, I understand your Honor.

3          THE COURT:  You say that that was a jurisdictional

4     motion?  Granted on lack of personal jurisdiction?

5          MR. BERGER:  Yes, your Honor.  Your Honor, in that

6     case, reviewed the so-called fiduciary shield doctrine as to

7     whether or not foreign-located bank executives could be subject

8     to jurisdiction in this district for actions that they

9     allegedly took steering the decisions of a foreign bank and

10    your Honor dismissed.

11         THE COURT:  But that's not the issue here.

12         MR. BERGER:  Well, that is --

13         THE COURT:  That is not the issue are you arguing,

14    that's not the basis of your motion.  Your motion is that they

15    insufficiently allege his personal involvement so therefore we

16    can't assert jurisdiction over him -- although, I have to think

17    that out because the analysis usually is I'm not supposed to

18    even get to the point of whether or not they sufficiently

19    allege his personal involvement for liability if there is no

20    jurisdiction over them.

21         MR. BERGER:  Absolutely, your Honor.  And jurisdiction

22    doesn't exist for the same reasons that the complaint is

23    implausible as against Mr. Hamdoun.

24         So, we cited, your Honor, in our opening motion at

25    page 7, the Second Circuit's decision in the *O'Neill v. Asat*

N215LELA

1   *Trust* case, *In Re:  Terrorist Attacks*, 714 F.3d 659.  That is

2   the jurisdictional decision.

3         THE COURT:  I will look at that.  Because usually in

4   most cases a defendant saying that I didn't do it doesn't

5   translate into a personal jurisdiction issue.

6         MR. BERGER:  Well, it does, your Honor, and let me

7   just quote this line from our opening brief, page 7.  Legal

8   conclusions couched as factual allegations do not suffice as a

9   prima facie showing of jurisdiction -- with citations -- and

10   Courts will not draw argumentative inferences in plaintiff's

11   favor, citing the *O'Neill* decision which was affirming your

12   Honor's dismissals in 12(b)(2).  You recall, your Honor, there

13   was a companion Second Circuit case called *O'Reilly* that was

14   the 12(b)(6) decision, *O'Neill* was the jurisdictional decision

15   and it upheld dismissal of foreign bank executives so we have

16   made this argument.

17         THE COURT:  So, but the grounds that you are arguing

18   for both is the underlying insufficiency of the allegations of

19   his personal involvement.

20         MR. BERGER:  Correct, your Honor; coupled with the

21   additional evidence and inferences that one must draw from the

22   forfeiture complaint and its settlement in the stipulation

23   settlement.  Those are dual-barreled sets of allegations and

24   evidence that prove, functionally, the jurisdictional standard,

25   right, no prima facie case of primary actor, and the 12(b)(6)

N215LELA

1   standard no plausible allegations of personal and knowing

2   participation.  We argue them jointly because the quantum of

3   evidence is the same and the standard is functionally the same.

4           THE COURT:  OK.

5           MR. BERGER:  But, you can find that based on no

6   jurisdiction, no prima facie case because of the insufficiency

7   of the allegations coupled with the undermining effect of the

8   forfeiture case, and your Honor can find it under 12(b)(6)

9   because of the insufficiency of the allegations and the

10  undermining effect of the forfeiture complaint and its

11  disposition.

12          THE COURT:  Thank you.

13          Mr. Tolchin?

14          MR. TOLCHIN:  Thank you, your Honor.  It is hard to

15  know where to begin.  Would you like to start, your Honor, with

16  the jurisdiction issue or --

17          THE COURT:  No, let's go to the heart of it.  What are

18  the factual allegations that you made in this complaint that

19  are sufficient to demonstrate the defendant's personal and

20  knowing participation?

21          MR. TOLCHIN:  I am happy you asked that question, your

22  Honor.  If you look at paragraph 119(c) of the complaint I will

23  read it out loud.

24          THE COURT:  Sorry.  Hold on.

25          MR. TOLCHIN:  Of the amended, your Honor, document 6.

N215LELA

```
 1              THE COURT:  119(c) on page 33?

 2              MR. TOLCHIN:  That's correct.

 3              THE COURT:  OK.

 4              MR. TOLCHIN:  Beginning prior to the Hezbollah rocket

 5    attacks and until early 2011, LCB and Hamdoun knowingly

 6    assisted Hezbollah to launder hundreds of millions of dollars

 7    through a complex international scheme, as set forth and

 8    detailed in the verified amended complaint and in an official

 9    finding issued on February 10, 2011, by the U.S. Department of

10    Treasuries Financial Crimes Enforcement Network.  FINCEN.  That

11    treasury finding incorporated here, and by reference, states

12    that the United States government, *Has information indicating*

13    *that a minority owner of the bank who concurrently serves as*

14    *general manager, his deputy shall* -- and by the word "deputy"

15    we insert a notation that this is a reference to defendant

16    Hamdoun -- *and the managers of key branches are in frequent and*

17    *in some cases even daily communications with the various*

18    *members of the Hezbollah scheme and they personally process*

19    *transactions on the network's behalf.*

20              So, the allegation of the complaint that brings it all

21    back home is this treasury report that found that Mr. Hamdoun,

22    the deputy manager, the deputy of the general manager,

23    personally processed transactions involving Hezbollah.  Now,

24    the government may have settled their case.  That doesn't bind

25    us.  By the government settling their case it doesn't mean he
```

1  didn't do it any more than the gentleman who was here being

2  sentenced earlier.  I am sure he was charged with bigger and

3  worse things than he pleaded guilty to but the government

4  agreeing to the plea doesn't mean he didn't do those things he

5  was charged with, it just means they worked it out.

6         Mr.Berger, after spending 80 percent of his time

7  talking about the complaint, he knew I would talk about this

8  treasury report so he mentioned it at the end and he said,

9  *Well, the government withdrew it.*  Well, they didn't withdraw

10 it.  Lebanese Canadian bank ceased operation, they withdrew it

11 as moot.  The LCB was not operating anymore.

12         THE COURT:  So, what are you alleging and what do you

13 say that the government is saying that Mr. Hamdoun did?

14         MR. TOLCHIN:  As we read the report Mr. Hamdoun

15 personally processed transactions on the terrorist group

16 Hezbollah's behalf.

17         THE COURT:  Why do you submit the word "personally"?

18         MR. TOLCHIN:  Because it is quoted from the report.

19         THE COURT:  Where does it say "he personally"?  I'm

20 sorry.

21         MR. TOLCHIN:  It is in the bold on the second to the

22 last line of page 33.

23         THE COURT:  Personally processed transactions.

24         MR. TOLCHIN:  Right.  That word "personally" isn't my

25 word, that's the government's word.

N215LELA

1          THE COURT:  And you say that the way it is worded

2   here, that's a reference to both of them?

3          MR. TOLCHIN:  That's a reference to the general

4   manager, his deputy, and the managers of key branches.

5          THE COURT:  And Hamdoun --

6          MR. TOLCHIN:  Hamdoun was the deputy.

7          THE COURT:  He is the deputy?

8          MR. TOLCHIN:  Yes.

9          Now, that is our plausible allegation.  Now, maybe

10  discovery will prove it is not true.  Maybe Mr. Hamdoun will

11  come in and testify and he will be so believable that we will

12  say, *Ooh yes, Mr. Hamdoun, how could we have doubted you?*  But

13  here we have the United States government made a finding.  It

14  is plausible to come in and say now it is not --

15         THE COURT:  Haven't you already done sufficient

16  discovery to determine whether there is any evidence of his

17  personal involvement?

18         MR. TOLCHIN:  Absolutely not.  Absolutely not.  And I

19  will say that I was shocked to hear Mr. Berger making reference

20  to documents that were produced, like, last week as if to say

21  oh, these documents, Judge Daniels, that are not before you,

22  they're not in this motion and they're extrinsic to the

23  complaint but, take my word for it, they exonerate Mr. Hamdoun,

24  sight unseen.  I mean that -- I'm sorry, but that's ridiculous.

25         THE COURT:  So, are you relying on any independent

N215LELA

1    facts other than the statements in the treasury report?

2              MR. TOLCHIN:  Well, it is hard to answer that question

3    because there is a great many independent facts about what

4    Hezbollah does and what LCB did.

5              THE COURT:  No, that's not the hard question I am

6    asking.  I am asking a more simple, direct question.  Are you

7    relying on any evidence of Mr. Hamdoun's personal participation

8    other than the reference by the Treasury?

9              MR. TOLCHIN:  We are relying on the Treasury report

10   and we think that's perfectly fair to do.

11             THE COURT:  Do I have a copy of that report?

12             MR. TOLCHIN:  It is not attached to any papers in this

13   case, however it was --

14             THE COURT:  Because it is obviously incorporated by

15   reference here.

16             MR. TOLCHIN:  It is incorporated by reference.  Let me

17   see if I -- it is not in the papers that are before the Court

18   right now.

19             THE COURT:  OK.

20             MR. TOLCHIN:  You are putting me on the spot to think

21   of where it was filed.  I believe it has been filed somewhere,

22   I just can't tell you exactly.

23             THE COURT:  OK, but that's where I want to narrow my

24   focus.  You are saying that --

25             MR. TOLCHIN:  I'm happy to submit it, if that would

N215LELA

1   help, your Honor.

2            THE COURT:  That would be helpful because you are

3   saying that the evidence that you are relying upon is the

4   determination and conclusion by the Treasury Department that

5   Mr. Hamdoun was personally involved in transactions with

6   Hezbollah.

7            MR. TOLCHIN:  That's correct.

8            THE COURT:  Do you have any sense of in what way that

9   reference is with regard to Mr. Hamdoun?

10           MR. TOLCHIN:  I'm not sure I understand the question.

11           THE COURT:  Well, my question is what did he do.

12           MR. TOLCHIN:  Well, what it said in the report that he

13   was -- look.  If banks weren't supposed to do business with

14   terrorist organizations where you have the manager and the

15   deputy general manager and division heads of the bank in daily

16   communication with the terrorist organization as the report

17   said --

18           THE COURT:  That's why I asked.  You are saying daily

19   communication here.

20           MR. TOLCHIN:  That's also a direct quote from the

21   report.

22           THE COURT:  And you are saying that should be

23   attributed to Mr. Hamdoun.

24           MR. TOLCHIN:  Absolutely.

25           THE COURT:  OK.

N215LELA

1          MR. TOLCHIN:  Look, we didn't make Hamdoun up out of

2     thin air.  I don't know --

3          THE COURT:  You sort of brought him in at a late stage

4     here.

5          MR. TOLCHIN:  Well, you know, you know the old story

6     about if the facts are on your side you argue the facts.  So, I

7     heard Mr. Berger --

8          THE COURT:  Which is on your side?  The facts or the

9     law?

10          MR. TOLCHIN:  I heard Mr. Berger open and go on and on

11     and on about how we brought this case just in the nick of time

12     for the statute of limitations.  But, when I hear that

13     something was brought just before the statute of limitations

14     what I hear is, well, it was brought before the statute of

15     limitations.  You are allowed to do that.

16          THE COURT:  Right.

17          MR. TOLCHIN:  Whatever the reason.  You know, when it

18     comes time for the statute of limitations you scratch your head

19     and say, *Wait, are there any other loose ends that need to be*

20     *tied up?  Oh, yeah, I meant to sue that guy Hamdoun.*  You can't

21     deduce anything from somebody being sued just before the

22     statute of limitations.

23          THE COURT:  The timing is not the critical thing, what

24     is critical is what is the information that you are relying on

25     now in this amended complaint that you did not rely upon in

N215LELA

1    making an original decision to have Mr. Hamdoun be a defendant.

2    And you say that that's this reference in (c) in 119(c) to the

3    Treasury report that gave you some indication that, based on

4    that report alone, that you can allege that that is sufficient

5    evidence to make him reliable personally.

6          MR. TOLCHIN:  Your Honor, I wouldn't read any

7    significance -- I wouldn't attach any significance at all to

8    the idea that, well, we didn't sue him in the first place.

9          THE COURT:  Right.

10         MR. TOLCHIN:  But now we sued him.  A lot goes into

11   it.  When the thing begins you don't realize what is going on,

12   you wonder maybe is the entity existing anymore, is there a

13   point?  How would we serve him?

14         THE COURT:  Well, I can tell you that that -- if you

15   didn't sue him at first and you sued him the day before the

16   statute of limitations ran out, it doesn't change my analysis

17   of whether or not the factual allegations in the amended

18   complaint filed the day before the statute of limitations ran

19   out are a sufficient set of allegations to sustain the charge.

20         MR. TOLCHIN:  That's a hundred percent correct.  As

21   long as it is timely it is a claim.  It is like someone who

22   went to medical school in Mexico, you still call them doctor.

23         THE COURT:  So, my focus is, OK, what is the evidence

24   that you are relying upon.  And what are you saying that he

25   personally did, and you say that you are relying upon the

N215LELA

```
 1      Treasury Department's reference to him in their report and you

 2      say that that reference is sufficient evidence on which to base

 3      an allegation of his personal --

 4              MR. TOLCHIN:  To get over the very, very basic

 5      allegation of plausibility.  It doesn't mean we won the trial,

 6      we didn't get our verdict.  Just by the government having

 7      written that in that report it makes our allegation plausible

 8      so that we get to come in to court, have it accepted as true

 9      for present purposes, and let's do discovery.

10              THE COURT:  And what is it that -- do you have any

11      idea on what the Treasury Department based its findings on?

12              MR. TOLCHIN:  The Treasury Department --

13              THE COURT:  I mean, do they have documents that

14      demonstrate Mr. Hamdoun's personal participation?  What are you

15      saying that you think that you, at this stage of the discovery,

16      that you think is the evidentiary support for this?  Not your

17      allegation but the evidentiary -- because the evidentiary

18      support for your allegation is the Treasury Department report.

19      So, my question is, what's the evidentiary basis for the

20      Treasury Department's conclusion to say that, oh yeah, Hamdoun

21      is personally liable?

22              MR. TOLCHIN:  Obviously we will explore that in

23      discovery but we have not only an officer of the court signing

24      that but the government itself signing that report.  It is

25      perfectly reasonable, in my view, to rely on the Treasury
```

N215LELA

1    Department report as a good faith allegation that they are not

2    just making it up out of thin air.  There is often times that

3    you have a finding, a public statement by the executive, a

4    finding by a judge, allegation by a prosecutor.  Such people

5    don't say things willy-nilly without some evidence.  And

6    remember, plausibility is a mild standard.  If I allege that

7    Hamdoun was an alien from Mars and he was trying to destroy the

8    Earth in an Orwellian invasion, that would be not plausible, it

9    would be ridiculous.

10         THE COURT:  So, it is my, at this stage, my focus on

11   this motion is whether or not the allegations that you are

12   relying upon in the Treasury report are sufficient factual

13   allegations to support your claim.

14         MR. TOLCHIN:  Yeah, I think you could say that.

15         THE COURT:  And so, how do I get a copy of the report

16   so I can read this quotation in context?

17         MR. TOLCHIN:  I will be happy to submit it.

18         THE COURT:  Is there anyplace else that I should look

19   other than logic and common sense to determine -- to make the

20   determination of whether or not this is a sufficient allegation

21   to support this claim against him individually?

22         MR. TOLCHIN:  Well, look --

23         THE COURT:  I can answer part of that question.  I

24   assume your response, part of your response would be if you

25   are, in conjunction with this report, you are relying somewhat

N215LELA

1   on his position in the bank.

2            MR. TOLCHIN:  For sure.  For sure.

3            THE COURT:  Anything else?

4            MR. TOLCHIN:  And what is generally known about

5   Lebanese Canadian Bank, Hezbollah and the whole gestalt.  But,

6   you know, the gestalt, I agree, it doesn't bring you to

7   directly, specifically, to Mr. Hamdoun.

8            THE COURT:  Any other paragraph that you think is

9   compelling in your complaint to support this allegation?

10            MR. TOLCHIN:  I'm content to rely on this.  I think it

11   drives it home.  We can go -- it is a long complaint, we can go

12   through a lot of similar allegations but they all say the same

13   thing.

14            THE COURT:  Unless there is something additional but,

15   again, I don't have the report in front of me so I don't know

16   exactly what context the statement was made and whether or not

17   the surrounding context lends support to the strong implication

18   and inference that you want to draw from this statement.

19            MR. TOLCHIN:  Understood.

20            Would you like me to talk a little bit about the

21   jurisdiction issue?

22            THE COURT:  Sure.

23            MR. TOLCHIN:  I think that's just open and shut.  I

24   have to commend Mr. Berger for creative tap dancing but I don't

25   think he brings it home at all.

N215LELA

1          There is a Rule 12(b)(6) motion which is a motion to

2    dismiss for failure to state a cause of action, and then there

3    is a Rule 12(b)(2) motion which is a motion to dismiss for lack

4    of personal jurisdiction.  If you look at the notice of motion,

5    which is before your Honor right now, it seeks to dismiss based

6    on 12(b)(6) and 12(b)(2).  He says they haven't stated a claim

7    and he says there is no personal jurisdiction.  In his memo of

8    law he goes through jurisdictional contacts and the whole

9    ordinary long-arm jurisdiction type of argument starting on

10   page 9 of his memo of law.

11          Now, when we had the original complaint and he filed a

12   motion to dismiss the original complaint, you can look at the

13   notice of motion, it is Docket no. 40, and that notice of

14   motion refers to Rule 12(b)(6) and Rule 12(b)(1).  12(b)(1)

15   lacks subject matter jurisdiction.  It does not say 12(b)(2).

16          THE COURT:  What are you referencing?

17          MR. TOLCHIN:  The notice of motion from Mr. Hamdoun's

18   first motion to dismiss.

19          THE COURT:  OK.  When you say first, not this motion?

20          MR. TOLCHIN:  Right.  I will walk you through it.

21          We filed a complaint and -- the original complaint.

22   The defendants filed a motion to dismiss the original

23   complaint.  That motion to dismiss was Docket entry 40.

24          THE COURT:  I see.

25          MR. TOLCHIN:  And the memo of law with respect to that

N215LELA

1   was 41.  After that motion we filed an amended complaint so the

2   amended complaint superseded the original motion to dismiss and

3   we now have the next motion to dismiss which is the one

4   currently before your Honor.

5          THE COURT:  You filed the amended complaint in lieu of

6   responding to the motion?

7          MR. TOLCHIN:  Well, not --

8          THE COURT:  In response to the motion.  You didn't

9   file a response to the motion.

10          MR. TOLCHIN:  We didn't file a response to the motion

11   but we didn't file it in the window.  Rather, we stipulated to

12   the schedule, etc.

13          So, Rule 12(h)(1) says that a party waives any defense

14   listed in 12(b)(2) to (5) by, (A) omitting it from a motion in

15   the circumstance described in Rule 12(g), or failing to either

16   make it by motion or including it in a responsive pleading.

17          THE COURT:  I think I understand your argument.

18          MR. TOLCHIN:  So, when they filed their motion --

19          THE COURT:  They did not file, a motion new for

20   personal jurisdiction.

21          MR. TOLCHIN:  For personal jurisdiction.  They said no

22   subject matter jurisdiction, they said no -- it doesn't state a

23   cause of action.  And you can read their brief that they filed

24   at that time, from cover to cover, it is Docket entry 41, it

25   doesn't say a word by jurisdictional contact, long-arm

N215LELA

1    jurisdiction, not present in the jurisdiction, or any other

2    kind of personal jurisdiction arguments.

3            THE COURT:  You say it doesn't need a reference.

4            MR. TOLCHIN:  It doesn't need a reference.

5            What I understand Mr. Berger to be doing, he is trying

6    to bootstrap, he says when we argue that it fails to state a

7    cause of action, well, if you haven't stated a cause of action

8    then the Court doesn't have jurisdiction, therefore we kind of

9    argued jurisdiction because we said there is no claim.  But I

10   think your Honor was perfectly correct saying, *I didn't do it,*

11   is a different argument from the Court has no jurisdiction over

12   me.  And what is fatal is just look at the notice of motion.

13   The notice of motion does not say 12(b)(2), it is just not

14   there.  The original notice of motion did not invoke 12(b)(2)

15   and so the defense was waived.  You know, they did -- in case

16   you might think that is unfair, let's just look at that for a

17   moment.

18           The motion that they did file was full-throated

19   25-page brief arguing the merits why the claim should be

20   dismissed for failing to state a cause of action.  So, they

21   came into court, they engaged, they wanted the Court -- had the

22   Court ruled that we failed to state a cause of action, they

23   would never have said, oh, well the Court actually had no

24   jurisdiction so it is not binding on us.  They would have been

25   very happy to embrace that decision that they were asking for.

N215LELA

1    So, they made a choice not to move at that time for dismissal

2    based on personal jurisdiction and whether your Honor thinks it

3    fair, or equitable, or not, it doesn't matter.  The Rule 12(h)

4    says if you didn't raise it in a motion, you waived it.  It

5    doesn't mean they don't get their day in court on the merits

6    but not on personal jurisdiction.

7            There was another issue out there that Mr. Berger

8    didn't address regarding the individual liability of Ester

9    Lelchook.  Would you like me to address it or should I rest on

10   my papers?

11           THE COURT:  I'm sorry.  Which issue?

12           MR. TOLCHIN:  There is one plaintiff, Ester Lelchook,

13   she is a plaintiff in her representative capacity as

14   administrator of an estate and in her own individual capacity.

15           THE COURT:  Right.

16           MR. TOLCHIN:  So she is one plaintiff among

17   thirty-something plaintiffs in her individual capacity.  She,

18   herself, is not a U.S. national, she was married to one, and

19   they have argued that she, herself, does not, in her individual

20   capacity, doesn't have the right to maintain a claim under the

21   Anti-Terrorism Act.  We argue that she does.  It comes down to

22   the statutory interpretation.  There is a couple of decisions

23   going one way, other decisions going another way.  If I were in

24   your Honor's shoes I would feel like this:  The good news is

25   that the issue is teed up in an appeal in the Second Circuit

N215LELA

1   that has been submitted without opposition and the clerk told

2   me 10 days ago a decision will issue soon.  So, if I were in

3   your Honor's shoes, I would await that decision but I will

4   address it further, if you would like.

5           THE COURT:  No, that's fine.  Thank you very much.

6           MR. BERGER:  Your Honor, I am exceedingly grateful

7   that you have pined Mr. Tolchin down to paragraph 119(c).  The

8   only time Mr. Hamdoun's name appears in paragraph 119(c) is

9   where Mr. Tolchin inserted it in his reading of the FINCEN

10  notes.  And details matter, your Honor, so I'm going to ask the

11  Court to review two documents in tandem.  Your Honor has

12  already asked for the FINCEN notice which is in 2011, and I

13  want your Honor, respectfully, to read the stipulation of

14  settlement and forfeiture action.

15          THE COURT:  Is that part of the record at this point?

16          MR. BERGER:  It is, your Honor.  We have cited to

17  where it can be found.  It is cited -- the copy of it is not

18  part of the record, we will tender a copy to the Court.

19          THE COURT:  Both of those documents will be helpful.

20          MR. BERGER:  Here is why it matters, your Honor.  It

21  matters crucially -- this is not a technical point, it is a

22  substantive point.

23          Mr. Tolchin says here is why we are put all our chips

24  down on the FINCEN notice.  And your Honor asked him, do you

25  need anything for more?  He says that's good enough for me,

N215LELA

1   that's the horse we are riding.

2            Here is the story:  The actual language says that the

3   government has information, which we don't know and we will

4   never know, your Honor knows we will never get Treasury to tell

5   us whatever they have behind this so we are stuck with this

6   conclusory assertion indicating that a minority owner of the

7   bank, who concurrently serves as general manager -- so that's

8   character no. 1, minority owner of the bank who concurrently

9   serves as general manager, his deputy -- they insert the words

10   Defendant Hamdoun -- and the managers of key branches --

11   Mr. Hamdoun is not a branch manager -- are frequently in

12   contact and do all the rest of this stuff.  When your Honor

13   reads the stipulation of settlement in the forfeiture action,

14   it provides the cast of characters in Schedule A to the

15   stipulation of who did what.  Not only is the government saying

16   we don't have a claim against all these people in Schedule A,

17   it says what their positions were.  Mr. Hamdoun is not,

18   according to the government's own submission, the minority

19   owner of the bank who concurrently serves as general manager.

20   That person is a Mr. Georges Zard Abou Jaoude, according to the

21   government's submission in the stipulation of settlement, his

22   deputy.  OK?  Who are the deputy general managers listed in the

23   stipulation of settlement?  There are two of them, listed at

24   the bottom of Schedule A, neither of them is Mr. Hamdoun.  And

25   managers of key branches.  You cannot, looking at the

N215LELA

1    government's cast of characters in the stipulation of

2    settlement, do what plaintiffs insert i.e. Defendant Hamdoun

3    because the stipulation of settlement and its cast of

4    characters expressly refutes that reading.  Having expressly

5    refuted that reading, and I invite the Court when we provide

6    the Court the tools to do the job, to look at them side by

7    side.  You cannot insert the words "Defendant Hamdoun" and

8    that, according to Mr. Tolchin, is their entire case.  If that

9    is their entire case they've just admitted their way out of it

10   because Mr. Hamdoun is not listed as the deputy general

11   manager, nor is he listed as the minority owner of the bank who

12   currently serves as general manager.  He is listed as the

13   general manager of the bank and, indeed, that is not one of the

14   positions cited in the FINCEN notice.  I did make the point

15   earlier that you can't trust the FINCEN notice because it came

16   out in 2011.  The stipulation of settlement was filed in 2013.

17   You cannot say, *your Honor, stop reading after 2011, nothing*

18   *else matters after that, you have to take my reading as gospel.*

19   Your Honor can't because the stipulation of settlement is

20   before the Court and conclusively refutes Mr. Tolchin's

21   reading.  If that's all they've got, then they've got nothing

22           Now, three or four minor other points.  I do invite

23   your Honor, we can't ask the Court to do it today, I'm happy to

24   approach and give it to you but I don't think that's fair to

25   the Court.

N215LELA

1              THE COURT:  No, I need you to submit both of those

2      documents so I can have them side by side.

3              MR. BERGER:  Right.

4              Four other quick points.  On jurisdiction, the one

5      sort of additional tightening of the balloon that they can't

6      get past is not only do they have to say he was a primary

7      actor, but let's say a primary actor in transferring money

8      through New York.  Your Honor has been through that allegation

9      as to LCB to a fair-thee-well.  Right?  That was the issue in

10     Licci; did LCB transact business through New York.  New York

11     Court of Appeals, Second Circuit they all weighed in on it,

12     nobody said Mr. Hamdoun participated in that.  That's the test.

13     Narrower for jurisdiction has to be through New York.

14             THE COURT:  As I understand the way now both sides

15     have articulated the issue for me, my understanding is that

16     there is clear case law procedure that if you file a 12(b)(6)

17     motion that you are waiving a jurisdictional claim if the

18     jurisdictional claim is not made at the earliest possible time

19     before the 12(b)(6) motion or with the 12(b)(6) motion.  And

20     their argument is that you did not -- you subjected yourself --

21     and that's the theory of that, the rationale -- is that you

22     subjected yourself to the jurisdiction of this Court by making

23     a 12(b)(6) motion and not making a jurisdictional motion before

24     subjecting yourself to the jurisdiction of the Court by asking

25     the Court to decide your substantive 12(b)(6) motion.

N215LELA

1          MR. BERGER:  So, your Honor, in the ordinary case

2     that's the rule, and I did address this in my opening but I

3     want to come back to it because of the context in which your

4     Honor is posing the question.  Perhaps the cases I cite will

5     have more significance.  While that is ordinarily the rule, the

6     *Boss Products* case and the *Phat Fashions* case I cited say that

7     notwithstanding that rule, there is no waiver of a

8     jurisdictional defense if there is some semblance -- that's the

9     word from these cases -- some semblance of a jurisdictional

10    challenge in the opening motion.

11         THE COURT:  Right.

12         MR. BERGER:  We say there is some semblance.

13         THE COURT:  Why would I or they believe that this was

14    a jurisdictional motion when you only made the motion pursuant

15    to 12(b)(6)?

16         MR. BERGER:  They don't have to believe it, only your

17    Honor does, so I would say it is really up to the Court in

18    deciding whether or not that some semblance of the test is

19    passed and here is why we say it is.  Mr. Tolchin kind of gave

20    you a hazy answer to a question that I think is important.  You

21    said, *So, you filed your amended complaint in response to the*

22    *motion?*  And he said, *Kind of, sort of, we worked out a*

23    *schedule.*  That's not exactly the whole truth so let's get the

24    whole truth here, which is, we filed our motion.  They said we

25    reserve our right to amend the complaint.  They then sent a

N215LELA

1    message -- and this is all in our reply papers with an

2    affidavit -- we waive our right to amend.  Then they, the other

3    defendant, Mr. Safa, the famous Mr. Safa, the prominent mention

4    in the complaint and in the forfeiture complaint, he filed a

5    motion to dismiss and he raised the jurisdictional challenge.

6    The plaintiffs came back to us and said, wait a minute, we said

7    we didn't want to amend but we would like your permission for

8    leave to amend out of time.  And we said we are willing to

9    agree to that but we want to then file our motion to dismiss.

10        Our view on that is this is the unusual case where

11   their own actions of waiving an amendment, then seeking our

12   permission to amend and filing an amended complaint restarted

13   the clock on what we could raise.  And since Mr. Safa raised a

14   jurisdictional challenge, we, at that point, raised the

15   jurisdictional challenge as well.  This is the -- it doesn't

16   have to be the rule in all cases, this is the unique case here

17   where they did waive.  Your Honor asked about the schedule.

18   That's the whole truth as to the schedule.

19        Now, he says it is ridiculous that I mention evidence.

20   Your Honor, we are all here about judicial efficiency, right?

21   And there is an artificiality to a Rule 12 motion, but the

22   Rule 12 motion is working if the artificiality being, the Court

23   has to assume the allegations are true unless rebutted by

24   extrinsic evidence or otherwise.  But, we are in discovery.

25   Whether it is, to borrow Mr. Tolchin's analogy, when he said it

N215LELA

1    doesn't matter, it is close enough for horseshoes in the

2    statute of limitations, it doesn't matter that he has had this

3    evidence for a week or two weeks or a year.  The evidence

4    refutes their allegations, and if the Court is disinclined to

5    entertain these arguments on Rule 12 then we respectfully

6    request the opportunity to get an expedited summary judgment

7    schedule supported by the evidence that Mr. Tolchin has that

8    says their allegations can't be proven.  That's not ridiculous,

9    that's judicial efficiency.

10           So, that's the only context in which I raise that.

11   And it was in that context that I mentioned the Menashe case as

12   well, who said -- there Mr. Hamdoun has said in response to

13   similar allegation, that he didn't do any of these things,

14   under oath.  Do I think there would be expedited discovery

15   focused on Mr. Hamdoun?  I don't know, but what I do know is we

16   should not be setting the case as to LCB on the same track as

17   to Mr. Hamdoun if your Honor has any concern about the Rule 12

18   motion.  But, your Honor, when you do the side-by-side

19   comparison of the Exhibit A, Schedule A to the stipulation of

20   settlement in the FINCEN notice on which he put all of his

21   chips, frankly, your Honor, that should be the end of the case

22   under Rule 12.

23           The last point, the survivor point that Mr. Tolchin

24   mentioned, a simple one.  The law in this Circuit, generally,

25   including in the Second Circuit's *Capital* decision, the appeal

N215LELA

1   from the Licci decision, says that, in general, only U.S.

2   nationals can sue.  Ester Lelchook is not a U.S. national, she

3   is entitled to sue in a representative capacity for death or

4   injury to the U.S. national David Lelchook.  She is not

5   entitled to sue as she purports to sue here for her own

6   injuries.  Mr. Tolchin says the Second Circuit is going to

7   decide this imminently; he is talking about another Lelchook

8   case in which there is no appearance by the other side.

9   However that issue is resolved by the Second Circuit in a

10  defaulted appeal is not going to provide binding guidance on

11  that issue here.  In the great weight of authority in this

12  district, non-U.S. nationals can only sue in representative

13  capacity not in personal capacity.

14          Your Honor, respectfully, I suggest that you do the

15  side-by-side comparison that I suggested before your Honor

16  makes any decision on how to resolve these issues.

17          THE COURT:  What is the status of discovery now and

18  what does the discovery schedule look like?

19          MR. TOLCHIN:  I think it is 30 months from now or

20  something like that.

21          MR. BERGER:  Your Honor, Judge Parker set an 18-month

22  discovery schedule when we appeared before her in June.  There

23  is a further conference next week before Judge Parker on

24  discovery.  Initially discovery requests were exchanged end of

25  November, beginning of December -- can't remember.  Document

N215LELA

| | |
|---|---|
| 1 | productions were made simultaneously two or three weeks ago so |
| 2 | that process is moving on alongside this. |
| 3 | THE COURT:  You are nowhere close to concluding |
| 4 | discovery? |
| 5 | MR. BERGER:  We are nowhere close to concluding |
| 6 | discovery.  What we did ask Judge Parker for is a stay of |
| 7 | discovery as to Mr. Hamdoun, individually, until your Honor had |
| 8 | resolved this motion which was not even fully briefed at the |
| 9 | time.  She entered that so we all knew that there was a |
| 10 | difference between what discovery would look like as to LCB and |
| 11 | what discovery might look like as to Mr. Hamdoun, and Judge |
| 12 | Parker stayed discovery on Mr. Hamdoun until your Honor could |
| 13 | decide the issues we put before the Court today. |
| 14 | THE COURT:  Thank you very much.  I will decide this |
| 15 | as quickly as possible and I will get right back to you. |
| 16 | MR. BERGER:  Your Honor, how would you like us to |
| 17 | submit the two documents?  Is letter sufficient? |
| 18 | THE COURT:  That is definitely sufficient.  And if you |
| 19 | can both agree on joint submission, that would be the most |
| 20 | efficient way to do it. |
| 21 | MR. BERGER:  Thank you, your Honor. |
| 22 | MR. TOLCHIN:  Your Honor, can I suggest something |
| 23 | different? |
| 24 | THE COURT:  Yes. |
| 25 | MR. TOLCHIN:  We can do it jointly, but I would like |

N215LELA

| | |
|---|---|
| 1 | to submit the document with a cover letter that points your |
| 2 | Honor to the specific pages or paragraphs to call your |
| 3 | attention to it.  I am absolutely certain that whatever I say |
| 4 | Mr. Berger will say I didn't say it right. |
| 5 | THE COURT:  Well, I don't have any -- the issue of |
| 6 | whether or not you want to point me to certain sections is a |
| 7 | different issue than whether or not I'm going to get further |
| 8 | argument in a long letter.  I have no problems from each side |
| 9 | to direct my attention to particular paragraphs in either |
| 10 | document that you say are important for me to review. |
| 11 | MR. TOLCHIN:  Can we just say a letter of no more than |
| 12 | two or three pages? |
| 13 | THE COURT:  Well, I mean, yeah, that's fine, but I |
| 14 | don't -- I'm not looking for further legal argument. |
| 15 | MR. TOLCHIN:  I understand. |
| 16 | THE COURT:  I am just looking for you to point to what |
| 17 | you say is the relevant evidence that I should review in the |
| 18 | context of the argument that I have already heard. |
| 19 | MR. TOLCHIN:  Understood. |
| 20 | MR. BERGER:  Right.  So, just to be clear, your Honor, |
| 21 | because sometimes I find that we don't hear things the same |
| 22 | way:  No argument in the supplemental letter. |
| 23 | THE COURT:  Right.  You can just point me to the |
| 24 | relevant factual allegation. |
| 25 | MR. BERGER:  Thank you, your Honor. |

N215LELA

1              THE COURT:  Thank you.

2              MR. TOLCHIN:  I am going to say right now, I plan to

3       point to why I believe that the reference to "deputy" refers to

4       Mr. Hamdoun.

5              MR. BERGER:  That sounds like argument, your Honor.

6              THE COURT:  I mean, I --

7              MR. TOLCHIN:  Without that it's --

8              THE COURT:  Well, I thought you have already told me

9       that.

10             MR. TOLCHIN:  No.  He says it says deputy and that

11      doesn't mean Hamdoun and he has another document where he says

12      that he deduces that it is not Hamdoun.  I want to show you why

13      I believe it is Hamdoun.  I will do it very, very briefly, very

14      concisely.

15             THE COURT:  Do this:  If you want to submit such a

16      letter, show it to them first.  If they agree that you can

17      submit such a letter and they can respond to it, then I will

18      accept it.

19             MR. TOLCHIN:  They'll never agree.

20             THE COURT:  Well, hope springs eternal.

21             MR. TOLCHIN:  Maybe this?  Maybe --

22             THE COURT:  Well, let me say this --

23             MR. TOLCHIN:  I will show it to them and they can add

24      their response.

25             THE COURT:  No.  Let me finish.

N215LELA

```
 1              Submit it to them.  If you want to make argument and

 2     if they say fine, we will just respond to it, then I will

 3     accept it.  If they don't, if they don't agree, then just send

 4     me a letter saying that you would like to submit something and

 5     I will make it and they can respond to it and I can make a

 6     decision whether or not we should get any further submissions.

 7     But, you know, once I see the document, as long as you point me

 8     to where you say the relevant evidence is, unless I need some

 9     further legal argument, I think you have fairly argued this and

10     you were clear to me what your positions are with regard to

11     these documents.

12              MR. TOLCHIN:  Thank you.

13              THE COURT:  Sure.

14              MR. BERGER:  Thank you, your Honor.

15                             o0o

16

17

18

19

20

21

22

23

24

25
```